STATE of North Dakota, Plaintiff
and Appellant,

v.

Michael T. CLARK, Defendant
and Appellee.

Cr. No. 1064.

Supreme Court of North Dakota.

April 24, 1985.

Larry M. Baer, State's Atty., Cando, for plaintiff and appellant; argued by Bruce D. Quick, Asst. Atty. Gen.

Michael T. Clark, pro se.

Kirschner and Baker, Fargo, amicus curiae; on brief.

LEVINE, Justice.

The State appeals from the Towner County Court's order of dismissal of a criminal complaint charging Michael T. Clark with issuing checks without sufficient funds. We reverse and remand.

On September 26, 1984, a criminal complaint was signed charging Clark with violating North Dakota Century Code § 6–08–16 by issuing five checks without sufficient funds. The same day the Towner County Court judge dismissed the complaint sua sponte on the grounds that *State v. Fischer*, 349 N.W.2d 16 (N.D.1984), declared NDCC § 6–08–16, as amended in 1983, unconstitutional.

The issue before us is whether the effect of this Court's prior declaration of the unconstitutionality of § 6–08–16, as amended in 1983, was to decriminalize the activity prohibited by that statute.

In *Fischer* we held that the 1983 amendments to NDCC § 6–08–16, which provided that following mandatory notice of disho-

nor, payment of a nonsufficient fund check constituted a defense to prosecution under § 6–08–16, as amended in 1983, violated equal protection by creating an unconstitutional wealth-based classification. We also held that the unconstitutional amendments were not severable but that § 6–08–16 was so connected with and dependent upon the amendments that the 1983 Legislature intended that statute should take effect in its entirety or not at all. *Fischer, supra,* at 18. Therefore, § 6–08–16, as amended in 1983, was declared unconstitutional in its entirety.

■ It is well established that unconstitutional legislation is void and is to be treated as if it never were enacted. *State v. Piekkola,* 90 S.D. 335, 241 N.W.2d 563 (1976); *State v. Bardsley,* 177 N.W.2d 599 (Neb.1970); see also, *First Bank of Buffalo v. Conrad,* 350 N.W.2d 580 (N.D.1984). Therefore, when legislation that is enacted to repeal, amend or otherwise modify an existing statute, is declared unconstitutional, it is a nullity and cannot affect the existing statute in any manner. Rather, the extant statute remains operative without regard to the unsuccessful and invalid legislation.[1] *State v. Ehr,* 57 N.D. 310, 221 N.W. 883 (1928); *Frost v. Corporation Commission,* 278 U.S. 515, 49 S.Ct. 235, 73 L.Ed. 483 (1929); see also, *State v. Mundy,* 53 N.D. 249, 205 N.W. 684 (1925); 1A Sutherland, Statutory Construction, § 22.37 (3d ed. 1972).

■ In this instance, the 1983 amendments did not repeal, but rather amended and reenacted the 1981 version of § 6–08–16 by adding the unconstitutional language (S.L.1983, Ch. 116, § 1). We conclude that the effect of the constitutional infirmity of the inseverable 1983 amendments was to render the 1983 statute a nullity, to be treated as if never enacted, *Piekkola, supra,* thereby leaving intact the 1981 statute until its valid repeal or amendment.[2]

The 1981 statute does not contain the payment defense. It was declared constitutional in *State v. Mathisen,* 356 N.W.2d 129 (N.D.1984), and thus remains in full force and effect. Consequently, we hold that Clark could be charged with violating the 1981 version of § 6–08–16.

The amicus curiae argues that *Fischer* held that the 1983 amendments adding the payment defense indicated a legislative intent that § 6–08–16 was to exist with such a defense or not at all.[3] *Fischer, supra,* at 18. Therefore, the amicus curiae asserts that if we rule that the 1981 statute, which contains no payment defense, remains operative we would be improperly overriding this legislative intent.

The argument is flawed based as it is on an interpretation of the language of *Fischer* out of context. The amicus curiae misreads *Fischer* as holding that it was the Legislature's intent that North Dakota was to have no "bad check" statute at all if § 6–08–16 were allowed to exist without a payment defense.

■ However, in *Fischer* we construed NDCC § 6–08–16 and its 1983 amendments to determine if the unconstitutional language providing the payment defense could be severed so that the remaining sections of the statute would continue in effect. We concluded that the unconstitutional language could not be severed because the Legislature did not intend the statute to stand without the payment defense. However, this ruling was made solely in the context of deciding the issue of severability. Determining whether or not unconstitutional portions of a statute can be severed from constitutionally viable portions

---

1. This rule applies whether or not the amendments contain a repealing clause. *State v. Ehr,* 57 N.D. 310, 221 N.W. 838 (1928).

2. Section 6–08–16 was amended by the 1985 Legislature to eliminate the language found unconstitutional in *Fischer.* House Bill 1072, signed by the Governor on April 15, 1985.

3. *Fischer* stated that the payment defense "constitutes an important and integral part of [§ 6–08–16] ... [and] serves to temper the harsh result of the strict liability element of the statute." *Fischer,* 349 N.W.2d at 18. Therefore, the *Fischer* court concluded that the 1983 Legislature did not intend the statute to stand without the payment defense.

involves an interpretation of legislative intent regarding the particular statute undergoing scrutiny. It does not involve an interpretation of legislative intent with regard to the effect of a determination of unconstitutionality on earlier versions of an invalid statute. That is a separate issue, neither raised nor considered in *Fischer*. Therefore, we did not conclude in *Fischer* that the Legislature intended there be no "bad check" law at all in North Dakota, absent a payment defense.

With regard to the question of legislative intent, it bears emphasis that were the issue in this case grounded on the construction or interpretation of a statute, then legislative intent would be pertinent. However, that is not the issue. What we address in this case is the legal consequence of a determination of the unconstitutionality of a statute. Our formulation of the applicable principle of law rests upon precedent. It is neither dependent upon nor connected with legislative intent. Indeed, the Legislature is presumed to know the law when enacting legislation, *Cannon v. University of Chicago*, 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979), and so would be chargeable with knowledge of the law established in *State v. Ehr, supra,* and *Frost v. Corporation Commission, supra.*

Furthermore, even if legislative intent were relevant, our conclusion that the 1981 statute remained in full force and effect is consonant with the history of North Dakota's "bad check" legislation. North Dakota has had a "bad check" statute continuously since 1915, demonstrating a definitive and settled legislative policy of policing the issuance of nonsufficient funds checks. It would be unreasonable to conclude that the 1983 Legislature intended to fracture tradition by condoning the misconduct it had proscribed continuously for better than 65 years. That clearly was not the intent of the Legislature.

Accordingly, we reverse the lower court's order of dismissal and remand for further proceedings.

ERICKSTAD, C.J., and VANDE WALLE, GIERKE and MESCHKE, JJ., concur.