Joshua Jeffrey OLSON, Plaintiff
and Appellant,

v.

NORTH DAKOTA DEPARTMENT OF
TRANSPORTATION DIRECTOR,
Defendant and Appellee.

Civ. No. 940056.

Supreme Court of North Dakota.

Oct. 27, 1994.

Darold A. Asbridge, Bismarck, for plaintiff
and appellant.

Monte L. Rogneby, Asst. Atty. Gen., Bismarck, for defendant and appellee.

LEVINE, Justice.

Joshua Jeffrey Olson appeals from a district court judgment affirming a Department of Transportation decision to revoke his driver's license for one year for refusing to submit to a blood-alcohol test. We reverse and hold that a minor taken into custody for drunk driving has a qualified statutory right to have his or her parent contacted, if reasonable under the circumstances, and read the implied consent advisory, prior to administration of a chemical test.

In the early morning hours of June 29, 1993, Burleigh County Deputy Sheriff Lonnie Quam observed seventeen-year-old Joshua Olson swerving between lanes and driving erratically. Deputy Quam contacted McLean County Deputy Sheriff James Youngbird, who joined Quam in pursuit of the car. Both officers activated their red lights to stop the car. When Olson stepped out of his car, the officers observed that he had difficulty maintaining his balance, smelled of alcohol, and had slurred speech. Deputy Youngbird read Olson the implied consent advisory and the *Miranda* warnings and asked him to perform two field sobriety tests. Olson failed both tests and Deputy Youngbird placed Olson under arrest for driving while under the influence of alcohol.

Following the instruction of NDCC § 39–20–01, *infra*, Deputy Youngbird asked the McLean County Sheriff's dispatcher to call Olson's parents. In addition, he asked Deputy Quam to stop by the Olson residence. Both attempts to contact Olson's parents were unsuccessful.

In the meantime, Deputy Youngbird drove Olson to the Turtle Lake hospital for a blood test. The nurse who was to administer the test would not draw Olson's blood without parental consent, so she placed a phone call to his parents. This attempt to contact Olson's parents was successful and after the nurse finished speaking with Olson's mother, Deputy Youngbird asked to speak to her. Deputy Youngbird told Olson's mother that he had Olson in custody and that Olson had been drinking and driving. He also disclosed the location of Olson's car. Deputy Youngbird did not read the implied consent advisory to Olson's mother, nor did Olson speak with his mother at that time.

After the telephone conversation, Deputy Youngbird asked Olson if he would consent to a blood test. Olson asked what would happen if he refused the test. Deputy Youngbird reread the implied consent advisory and then asked Olson again if he would submit to the blood test. Olson decided not to take the test. Deputy Youngbird then drove Olson to the McLean County Sheriff's department. When they arrived, an attorney was on the telephone waiting to speak with Olson. The attorney advised Olson to submit to a urine test and asked Deputy Youngbird to administer such a test. Youngbird did not give Olson the test because only two or three minutes remained in the permissible two-hour testing period.

An administrative license revocation hearing was held by the Department of Transportation and the hearing officer, finding that Olson had refused the chemical test, revoked his license for one year under NDCC § 39–20–04. The district court upheld the revocation. On appeal, Olson argues that Deputy Youngbird's failure to read the implied consent advisory to his mother vitiates his refusal to take a chemical test. We agree.

■ The Administrative Agencies Practice Act, NDCC ch. 28–32, governs an appeal from an administrative hearing officer's decision to revoke a driver's license. *Erickson v. Director, N.D. Dept. of Transp.*, 507 N.W.2d 537 (N.D.1993). We review the findings of the administrative agency rather than the district court decision. *Samdahl v. Director, N.D. Dept. of Transp.* 518 N.W.2d 714 (N.D. 1994). "The interpretation of a statute is a question of law, fully reviewable by this court." *Kallhoff v. N.D. Workers' Comp. Bureau*, 484 N.W.2d 510, 512 (N.D.1992). We will reverse an agency decision that is not in accordance with the law. *See Bieber v. Director, N.D. Dept. of Transp.*, 509 N.W.2d 64 (N.D.1993).

■ Our objective when construing a statute is to ascertain the intent of the legislature, and we accomplish this by giving the language of the statute its "plain, ordinary, and commonly understood meaning." *Stew-*

*art v. Ryan*, 520 N.W.2d 39, 45 (N.D.1994); *State v. Pippen*, 496 N.W.2d 50 (N.D.1993). We presume that the legislature knows the law and is aware of previously enacted statutes, *State v. Clark*, 367 N.W.2d 168 (N.D. 1985), and thus we attempt to harmonize conflicts among them. *BASF Corporation v. Symington*, 512 N.W.2d 692 (N.D.1994).

■ The statute at issue in this appeal is NDCC § 39–20–01. The relevant portion of that statute says:

"When a child is taken into custody for violating section 39–08–01 or an equivalent ordinance, the law enforcement officer shall diligently attempt to contact the child's parent or legal guardian to explain the cause for the custody and the implied consent chemical testing requirements. Neither the law enforcement officer's efforts to contact, nor any consultation with, a parent or legal guardian may be permitted to interfere with the administration of chemical testing requirements under this chapter."[1]

The parties agree that the officer satisfied the diligence requirement of the statute by both telephoning the Olson home and sending Deputy Quam to the Olson home. If, after the exercise of diligence by law enforcement personnel, Olson's parent had not been contacted, our analysis would end, because the statute would be satisfied. However, in this case, we must decide whether, once telephonic contact with the parent actually was made, Officer Youngbird had a statutory obligation to read the implied consent requirements to Olson's mother.

A plain reading of the statute discloses a two-fold purpose for contacting the child's parent: to explain the cause for custody *and* to explain the implied consent testing requirements. It is clear that the legislature intended a parent to be involved in the child's decision to take or refuse a chemical test. This kind of parental involvement is consistent with the idea that parents are entitled to direct and guide their children's decision-making. *See In the Interest of R.D.S.*, 259 N.W.2d 636 (N.D.1977). However, the statute requires more than parental guidance and input. It also requires that a parent receive essential information from law enforcement representatives about the reason for the child's confinement and the specifics of the implied consent chemical-testing requirements. The legislature has decided that an informed parent is a necessary prerequisite for a wise advisor. The extent of the right of parental involvement, however, is limited. Neither the effort to reach a parent nor the successful contact of a parent may be used to "interfere with the administration of chemical testing." But, once an officer timely contacts a child's parent, whether fortuitously or by design, the officer must comply with the statute's directives.

The question then is what remedy does a child have when the child's parent is not advised as the statute requires? Olson argues that the failure to advise his mother should invalidate his refusal to submit to a blood test. This case is remniscent of *Kuntz v. State Highway Comm'r*, 405 N.W.2d 285 (N.D.1987), in which a majority of this court held that a person arrested for DUI has a limited statutory right to consult with counsel prior to electing whether or not to submit to a chemical test.[2] Because Kuntz was not afforded a reasonable opportunity to consult with counsel, we held that his failure to submit to the test was not a refusal. *Id.*

■ The Department of Transportation argues that a parent is not the equivalent of an attorney and therefore, failure to comply with the statute should not make Olson's "refusal" ineffective. However, children are recognized as members of a special class of citizens who may require additional legal protection. *In Interest of B.S.*, 496 N.W.2d 31 (N.D.1993). Our law requires parental assistance prior to a valid waiver of a juvenile's other important statutory rights. *State v.*

---

**1.** The term "child" means a person under eighteen years of age unless otherwise specified. NDCC § 14–10–01.

**2.** At issue in *Kuntz v. State Highway Comm'r*, 405 N.W.2d 285 (N.D.1987), was NDCC § 29–05–20:

"29–05–20. *Delay after arrest prohibited—Attorney.*—The accused in all cases must be taken before a magistrate without unnecessary delay, and any attorney at law entitled to practice in the courts of record of this state, at his request, may visit such person after his arrest."

*Ellvanger*, 453 N.W.2d 810 (N.D.1990). A juvenile's right to counsel under the Uniform Juvenile Court Act [UJCA], § 27–20–26(1), may not be waived by a child not represented by a parent or guardian. *In Interest of D.S.*, 263 N.W.2d 114 (N.D.1978). Parents are also entitled to notice of hearings involving their children under the UJCA. NDCC §§ 27–20–22, 27–20–34. We believe the legislature has identified yet another situation in which juveniles need the protection and assistance of their parents either to contact an attorney for them or to give them advice on whether or not to take a chemical test. If the statutory directives are not complied with, then a child's subsequent failure to take a chemical test is not a refusal for purposes of section 39–20–01.

The Department of Transportation also argues that compliance with section 39–20–01 should not be considered at the administrative hearing because NDCC § 39–20–05(3) expressly says that "[w]hether the person was informed that the privilege to drive would be revoked or denied for refusal to submit to the test or tests is not an issue [at the administrative hearing]." This argument suggests a potential conflict between sections 39–20–05(3) and 39–20–01; however, we believe these two provisions are readily harmonized.

 The legislature·has deemed a parent's counsel a necessary protection for a juvenile to decide whether or not to take a chemical test. When that assistance is denied due to the officer's failure to follow the statute, it deprives the parent of her or his legislative due and deprives the child of the benefit of parental advice. We have already decided that whether or not an individual has refused to take a chemical test is a proper issue for the administrative hearing. NDCC § 39–20–05(3); *Kuntz*, 405 N.W.2d 285. Whether or not there has been a reasonable opportunity to consult with a parent before deciding to take a chemical test is a different issue than the one section 39–20–05(3) precludes from consideration at the administrative hearing. That section prohibits a driver from raising the issue of ignorance of the law. It does not forbid consideration of the issue of whether a child, who has not been afforded parental guidance, when that guidance was reasonably available, has made an effective refusal. *See Baillie v. Moore*, 522 N.W.2d 748 (N.D.1994) [refusal by driver who was denied reasonable opportunity to consult with attorney was not the affirmative refusal required for revocation under NDCC § 39–20–04].

Accordingly, there is no conflict between the statutes and the hearing officer erred in his interpretation of those statutes. Consequently, the Department's decision to treat Olson's failure to submit to a blood test as a refusal was not in accordance with the law, and we reverse the license revocation.

Reversed.

MESCHKE, J., concurs.

VERNON R. PEDERSON, Surrogate Judge, sitting in place of SANDSTROM, J., disqualified.

VANDE WALLE, Chief Justice, concurring in result.

*Kuntz v. State Highway Com'r*, 405 N.W.2d 285 (N.D.1987), held that a person arrested for DUI has a limited statutory right to consult with a lawyer before deciding whether to submit to a chemical test. I agreed with the majority that there appeared to be no valid reason why Kuntz should not have been permitted to call his attorney before deciding whether or not to submit to the test. I nevertheless dissented because I did not agree that the violation of a statutory right should work on exclusion of the refusal so as to reverse the revocation of the license. *Kuntz, supra,* at 291 (Vande Walle, J., dissenting).

Since that opinion, a majority of our Court has refused to extend the holding to a case in which the driver submitted to a test, without objection, after having requested to call an attorney and being told he could call an attorney after the test. The majority observed that *Kuntz* did not involve suppression of evidence in an administrative hearing and limited *Kuntz* to its narrow issue, i.e., what constitutes a refusal to submit to the

test. *Holte v. State Highway Com'r*, 436 N.W.2d 250 (N.D.1989).

Subsequently, the Legislature has not amended the statute in this regard. *Compare Nyflot v. Commissioner of Public Safety*, 369 N.W.2d 512 (Minn.1985) [1984 legislative amendment eliminated statutory right to consult with counsel before deciding whether to submit to chemical testing]. Presumably it has acquiesced in the holding of the majority in each instance. *City of Bismarck v. Uhden*, 513 N.W.2d 373 (N.D.1994). As a result of legislative inaction and because this procedure is statutory, I have recognized the limited holding of the majority in *Kuntz*. *See, e.g., Baillie v. Moore*, 522 N.W.2d 748 (N.D.1994). *Evans v. Backes*, 437 N.W.2d 848, 851 (N.D.1989) [Vande Walle, J., concurring in result].

The majority in *Kuntz* relied on section 29–05–20, NDCC, to construct the statutory right to call a lawyer before submitting to the test. If, indeed, that section, which had its origin in the Code of Criminal Procedure of 1877, gives the driver a right to consult a lawyer prior to agreeing or refusing to submit to the test, in an administrative proceeding, I believe the direct statement of the Legislature in section 39–20–01, NDCC, which is concerned specifically with children taken into custody for driving under the influence, must be given more weight.

The statute plainly states that neither the law enforcement officer's effort to contact the parents, or any consultation with the parent, may be permitted to interfere with administration of the test. But, I read those words as I do the majority's words in *Kuntz*, i.e., the right to consult with a lawyer before deciding to take the test "is a qualified right which cannot be used to materially hamper the process of administering the chemical test" and that "[i]f the person arrested is unable to reach an attorney by telephone or otherwise within a reasonable time," the person "can be required to elect between taking the test and refusing it without the aid of an attorney." *Kuntz, supra*, at 290. *See also Lund v. Hjelle*, 224 N.W.2d 552 (N.D.1974) [individual may reconsider a refusal to take test when request does not interfere with test].

Although the statutory language specifies that the failure to contact the parents and the consultation cannot interfere with the test, that language cannot relieve the officer of the duty to explain to the parents when, as here, the parent is actually contacted. Nor is the contact requirement simply to let the parent know where the child is and what the child is charged with. I agree with the majority that the requirement that the officer explain to the parent the implied consent testing requirements is for a purpose, i.e., so the parent may, in turn, consult with the child.[1] Any other construction makes the requirement meaningless and the statute could as well require the officer to explain to the parent the Rule in Shelley's Case.

While the specific requirement for children might be construed to conflict with section 39–20–05(3), NDCC, it is a specific provision that prevails over the more general provision in 39–20–05(3). *E.g., Matter of Estate of Laschkewitsch*, 507 N.W.2d 65 (N.D.1993).

Unlike *Kuntz*, the requirement that the officer notify the parent is specific and made a part of the chapter on chemical tests for intoxication. The Legislature has not rejected the majority's conclusion in *Kuntz* that the refusal to take the test without the qualified opportunity to consult a lawyer is not a refusal upon which to revoke a license. Because I see no material distinction between *Kuntz* and this case insofar as the remedy is concerned, I agree with the result reached in the majority opinion.

---

1. The requirement that the parent be notified of the implied consent testing requirements and given the opportunity to consult with the child may seem ineffective in view of our decision in *In Interest of J.D.Z.* 431 N.W.2d 272 (N.D.1988) [presence of child's parents during questioning by officer was not adequate representation of child's interests]. Furthermore, under *Kuntz v. State Highway Com'r*, 405 N.W.2d 285 (N.D. 1987), the child would also be entitled to the qualified right to consult a lawyer before agreeing or refusing to take the test. The parent might advise the child to contact a lawyer for that purpose. However, the fact the parent advised the child not to submit to the test without a lawyer would not invalidate the refusal absent a request by the child to consult a lawyer, notwithstanding we carefully scrutinize a child's waiver of constitutional and statutory rights. *See* 67 N.D.L.Rev. 527 (1991).

NEUMANN, Justice, dissenting.

The majority attempts to explain away the conflict between its interpretation of section 39–20–01 and the legislature's express mandate in section 39–20–05(3) by misstating the question. The majority says that 39–20–05(3) prohibits a driver from raising the issue of his ignorance of the law, but does not preclude the issue of whether a child "who has not been afforded parental guidance" has made an effective refusal. That characterization of the issue begs the question.

Olson was not deprived of parental guidance; his mother was contacted. His mother, however, was not advised of the implied consent requirements. Thus, while 39–20–05(3) clearly states that the driver cannot raise his own ignorance of the law as an issue at an administrative hearing, the majority's interpretation of 39–20–01 permits a driver who is a minor to raise *his parents'* ignorance of the law as an issue. That result strikes me as an inconsistency that is not explained away by the driver's minority, particularly when the legislature took the trouble to provide in 39–20–01 that neither the attempts to contact the parent, nor any consultation with the parent that might result, may interfere with the administration of the test.

I think it is a much more reasonable harmonization of 39–20–01 and 39–20–05(3) to hold that if the reading of the implied consent advisory to the driver cannot be an issue at the administrative hearing, then neither can the reading of the implied consent advisory to the driver's *mother* be an issue at the administrative hearing. I would affirm.

VERNON R. PEDERSON, Surrogate Judge, dissenting.

When I take into consideration: 1) the volume of appeals which arise out of the "implied consent" statutes (NDCC ch. 39–20) and 2) the vast variety of opinions expressed thereon by the justices over the years, I quickly reach the conclusion that it would be absurd for the Legislative Assembly to impose upon law enforcement officers, under circumstances such as we find in this case, a prerequisite obligation to contact a child's parent or guardian, *to explain the cause for the custody of the child and to explain the implied consent chemical testing requirements.*

Because the legislature does not intend absurd results, it must have intended those words to be "hortatory and precatory but not mandatory." *See, e.g., Dathe v. Wildrose School District No. 91,* 217 N.W.2d 781, Syl. 1 (N.D.1974).

In order to interpret the words in section 39–20–01, NDCC, as mandatory and not "hortatory and precatory," the majority opinion creates a new and exotic use for the exclusionary rule (the rule that throws the baby out with the bath water) and which frustrates the purpose and the administration of this public safety statute.

Proceedings under the implied consent law which relate to the suspension or revocation of a driver's license are civil in nature and a refusal to submit to chemical test until counsel is consulted is an unreasonable refusal. There is no right to counsel in a civil proceeding. *See Agnew v. Hjelle,* 216 N.W.2d 291 (N.D.1974).

Use of the public highways is not an absolute right. It is, instead, a privilege which persons enjoy subject to the control of the state in its valid exercise of police power. *See State v. Kouba,* 319 N.W.2d 161 (N.D. 1982).

Procedural fairness provides the required minimal due process. *Kobilansky v. Liffrig,* 358 N.W.2d 781 (N.D.1984).

A driver's license is not a "title of nobility." *State v. Larson,* 419 N.W.2d 897 (N.D.1988).

The Administrative Agencies Practice Act defines the due process required in driver's license suspensions for refusal to submit to the chemical testing for blood-alcohol content. *Samdahl v. N.D. Dept. of Transp. Director,* 518 N.W.2d 714 (N.D.1994).

Section 39–20–01, NDCC, provides that any person who operates a motor vehicle upon a highway *is deemed to have given consent to a chemical test.* Logic dictates that no further consent is required. A refusal constitutes a withdrawal of that statutory consent.

No constitutional questions, federal or state, have been properly raised in this case. *See State v. Beaton,* 516 N.W.2d 645 (N.D. 1994), and specifically the dissent of Justice Levine at page 650.

Caught spray painting in Singapore, a teenager can get his butt caned. For driving in North Dakota while drunk, the law might tattle to his Mommy. What's happening to our civilization, anyway? The judgment of the district court should be affirmed and the appeal from the administrative determination should be dismissed.