2008 ND 39

**In the Interest of R.P., a Child.**

**Tyrone J. Turner, Petitioner and Appellant**

v.

**R.P., Child, A.P., Mother, J.P., Father, Respondents and Appellees.**

No. 20070151.

Supreme Court of North Dakota.

Feb. 27, 2008.

Tyrone J. Turner, Assistant State's Attorney, Bismarck, N.D., for petitioner and appellant.

Justin J. Vinje of Vinje Law Firm, Bismarck, N.D., for respondent and appellee.

MARING, Justice.

[¶ 1]   The State appeals a juvenile court order affirming a juvenile referee's order granting the motion of R.P., a juvenile, to suppress the results of an Intoxilyzer test. R.P. was involved in an early morning traffic accident and taken into police custody because officers suspected he drove while under the influence of alcohol. R.P. contacted his mother on his cellular phone before being taken into police custody. R.P.'s mother arrived at the scene of the accident, and both of R.P.'s parents were present at the police station before the Intoxilyzer test was administered. The police would not, however, grant R.P.'s requests to talk to his parents.

[¶ 2]   After being charged, R.P. moved to suppress the test results, claiming he had a statutory right to consult with his parents before submitting to chemical test-

ing. A juvenile referee granted the motion, and the juvenile court affirmed the referee's order. On appeal, the State argues R.P. did not have a statutory right to consult with his parents regarding whether to take the chemical test. We affirm the juvenile court order and hold that a juvenile has a statutory right to a reasonable opportunity to consult with a parent, guardian, custodian, or legal counsel before submitting to chemical testing when providing the opportunity to consult does not materially interfere with administration of the chemical test.

## I

[¶ 3] At approximately 1:00 a.m. on February 3, 2007, R.P. was involved in a traffic accident. Bismarck police officer John Brocker responded to the accident. R.P. called his mother, A.P., from his cellular phone and asked her to come to the accident scene. His mother arrived near the time R.P. was placed in the rear passenger seat of a police vehicle.

[¶ 4] The juvenile referee found that the officer read the implied consent advisory to R.P. and asked R.P. to consent to an Intoxilyzer test while he was in the police vehicle. R.P. asked to speak to A.P., but was not allowed to do so at the accident scene. The officer transported R.P. to the police department. A.P. left the accident scene, drove home to pick up her husband, J.P., and drove to the police department. A.P. testified that she attempted to talk to her son both at the scene of the accident and again at the police department.

[¶ 5] A.P. and J.P. were taken to the room at the police department where R.P. was being held. The juvenile referee found they were not provided a reasonable opportunity to talk to their son out of the hearing of the police officer. The officer informed them that R.P. had no choice but to take the test or lose his driver's license.

The juvenile referee found that R.P.'s parents felt they had no options and no say in the matter. The juvenile referee found that granting R.P.'s request to talk to his parents prior to administration of chemical testing would not have interfered with the timely administration of the Intoxilyzer test; more than one-half hour remained after R.P.'s chemical test was taken.

[¶ 6] The juvenile referee concluded R.P. was not represented by nor allowed to consult with his parents or legal counsel. The juvenile referee found that R.P.'s parents were not able to represent him, and at no time were they provided a reasonable opportunity to consult with him prior to administration of the Intoxilyzer test. The juvenile referee granted R.P.'s motion to suppress and the juvenile court affirmed the referee's order. The State appeals, arguing R.P. did not have a statutory right to consult with his parents regarding whether to take the Intoxilyzer test.

## II

[¶ 7] Rule 52(a), N.D.R.Civ.P., instructs us to review a juvenile court's factual findings under a clearly erroneous standard. *In re R.W.S.*, 2007 ND 37, ¶ 8, 728 N.W.2d 326. Due regard is given to the opportunity of the juvenile court to judge the credibility of the witnesses. *Id.* "A finding of fact is clearly erroneous if there is no evidence to support it, if the reviewing court is left with a definite and firm conviction that a mistake has been made, or if the finding was induced by an erroneous view of the law." *Id.*

[¶ 8] Questions of statutory interpretation are questions of law. *Rojas v. Workforce Safety and Ins.*, 2006 ND 221, ¶ 13, 723 N.W.2d 403. Questions of law are reviewed de novo. *Id.* Our primary objective in statutory interpretation is to determine the legislature's intent. *Id.* To deter-

mine the legislature's intent, we look at the language of the statute itself and give it its plain, ordinary, and commonly understood meaning. *Overboe v. Farm Credit Services*, 2001 ND 58, ¶ 9, 623 N.W.2d 372. We interpret statutes in context and harmonize statutes whenever possible to avoid conflict between them. *Rojas*, at ¶ 13.

## III

[¶ 9] This case centers on a juvenile's right to consult with legal counsel, or a parent or legal guardian before deciding to take or refuse a chemical test. Our previous decisions regarding a juvenile's general right to consult with counsel or a parent or legal guardian establish a juvenile cannot waive the right to counsel at custodial stages of proceedings unless the child is represented by a parent, guardian, or custodian; and the mere presence of a juvenile's parent does not constitute "representation" of the juvenile. *See, e.g., In re Z.C.B.*, 2003 ND 151, ¶ 13, 669 N.W.2d 478; *In Interest of D.S.*, 263 N.W.2d 114, 119–20 (N.D.1978); *In Interest of B.S.*, 496 N.W.2d 31, 33 (N.D.1993).

[¶ 10] Here, the specific issue we address is whether our present statutory scheme grants a juvenile a limited statutory right of parental involvement in deciding whether to submit to chemical testing after being taken into custody for driving while under the influence. The State argues that R.P.'s Intoxilyzer test results were improperly suppressed because a juvenile does not have a right to consult with his parents before deciding whether to consent to testing. R.P. asserts the Intoxilyzer test results were properly suppressed because police officers violated his statutory right to consult with his parents regarding whether to submit to the Intoxilyzer test.

[¶ 11] Section 39–20–01, N.D.C.C., provides that any person who operates a vehicle on a public highway is deemed to have given consent, and shall consent, to a chemical test. A driver has a limited statutory right to counsel under the implied consent statute: "An arrested person who asks to speak with an attorney before taking a chemical test must be given a reasonable opportunity to do so if it does not materially interfere with the test administration." *State v. Berger*, 2001 ND 44, ¶ 17, 623 N.W.2d 25. A totality of the circumstances test is used to determine the reasonableness of the opportunity. *Id.* The remedy available to an individual who is denied the right to consult with counsel before submitting to an Intoxilyzer test is to file a motion to suppress the results of the test. *See id.* at ¶ 15.

[¶ 12] Our determination that a driver has a limited right to consult with an attorney before taking a chemical test was first announced in *Kuntz v. State Hwy. Com'r*, 405 N.W.2d 285 (N.D.1987). This limited right to consult with an attorney is based on an interpretation of the right to counsel under N.D.C.C. § 29–05–20. *Kuntz*, 405 N.W.2d at 287. Section 29–05–20, N.D.C.C., provides, "[t]he accused in all cases must be taken before a magistrate without unnecessary delay, and any attorney at law entitled to practice in the courts of record of this state, at the attorney's request, may visit such person after that person's arrest." The determination that a driver has a limited right to consult with an attorney before taking a chemical test was also "underscored by constitutional due process principles." *Kuntz*, 405 N.W.2d at 288.

[¶ 13] Juveniles are provided a statutory right to counsel by the Uniform Juvenile Court Act. *See* N.D.C.C. § 27–20–26. A juvenile is recognized as a member of a special class of citizens who may require additional legal protection. *See Olson v. N.D. Dep't of Transp. Dir.*, 523

N.W.2d 258, 260 (N.D.1994). Section 27–20–26, N.D.C.C., provides, "Counsel must be provided for a child not represented by the child's parent, guardian, or custodian at custodial, post-petition, and informal adjustment stages of proceedings under this chapter." This statute imposes a mandatory duty to appoint counsel for a child not represented by a parent, guardian, or custodian. *In Interest of D.S.*, 263 N.W.2d at 120. "A juvenile's right to counsel may not be waived unless the child is represented by his parent, guardian, or custodian." *In re Z.C.B.*, 2003 ND 151, ¶ 13, 669 N.W.2d 478. A parent's presence does not alone constitute representation. *In Interest of B.S.*, 496 N.W.2d at 33. In order for a parent's presence to constitute representation, a parent, at the very least, has to understand it is his or her role to advise the child and has to take an active role at the proceeding. *See id.* at 33–34.

[¶ 14] We have said that the purpose of the implied consent statute, N.D.C.C. § 39–20–01, as applied to a juvenile, "is to inform the parent or guardian why a minor is in custody and to allow the parent or guardian to be involved in the minor's decision whether to consent to take a chemical test." *In re Z.C.B.*, 2003 ND 151, ¶ 17, 669 N.W.2d 478. In *Olson v. N.D. Dep't of Transp. Dir.*, 523 N.W.2d 258 (N.D.1994), we held that a juvenile has a limited statutory right of parental involvement in deciding whether to submit to chemical testing. "Neither the effort to reach a parent nor the successful contact of a parent may be used to 'interfere with the administration of chemical testing.'" *Id.* at 260 (quoting N.D.C.C. § 39–20–01). "But, once an officer timely contacts a child's parent, whether fortuitously or by design, the officer must comply with the statute's directives." *Id.*

[¶ 15] When *Olson* was decided, N.D.C.C. § 39–20–01 provided, in relevant part:

When a child is taken into custody for violating section 39–08–01 or an equivalent ordinance, the law enforcement officer shall diligently attempt to contact the child's parent or legal guardian to explain the cause for the custody and the implied consent chemical testing requirements.

N.D.C.C. § 39–20–01 (1993).

[¶ 16] One year after the *Olson* opinion, N.D.C.C. § 39–20–01 was amended. *See* 1995 N.D. Sess. Laws ch. 299, § 2. The amended version of the statute does not include the word "diligently" and no longer requires an officer to explain the implied consent testing requirements to the juvenile's parent or legal guardian. Under N.D.C.C. § 39–20–01 (1995),

When a person under the age of eighteen years is taken into custody for violating section 39–08–01 or an equivalent ordinance, the law enforcement officer shall attempt to contact the person's parent or legal guardian to explain the cause for the custody.

The State contends that N.D.C.C. § 39–20–01 requires officers to attempt notification of parents when a juvenile is taken into custody for driving under the influence only to explain the cause for the custody. The State further argues that the 1995 amendment to N.D.C.C. § 39–20–01 was intended to eliminate the requirement of parental consultations announced in *Olson v. N.D. Dep't of Transp. Dir.*, 523 N.W.2d 258 (N.D.1994). Therefore, the State asserts law enforcement officers were not required to consult with R.P.'s parents about chemical testing under the current statutory scheme.

[¶ 17] R.P. argues that the 1995 amendment to N.D.C.C. § 39–20–01 did not deprive him of a statutory right to consult with his parents before submitting to chemical testing. R.P. asserts that the

language deleted from N.D.C.C. § 39–20–01 in 1995 only relieved law enforcement from having to read the implied consent advisory to parents of juveniles. We agree.

[¶ 18] A closer examination of the *Olson* case and review of the legislative history regarding the 1995 amendment to N.D.C.C. § 39–20–01 supports our holding that the 1995 amendment to N.D.C.C. § 39–20–01 did not deprive juveniles of their right to consult with a parent before submitting to chemical testing.

[¶ 19] The present case is distinguishable from *Olson*. In *Olson*, law enforcement officers successfully contacted the mother of a juvenile under arrest for driving while under the influence of alcohol. *Olson*, 523 N.W.2d at 259. An officer told the mother that the juvenile was in custody and that the juvenile had been drinking and driving. *Id.* The officer did not read the implied consent advisory to the juvenile's mother, nor did the juvenile speak to his mother. *Id.* After the officer spoke to the juvenile's mother, the officer asked the juvenile if he would consent to a blood test. *Id.* The juvenile did not take the test. *Id.* The issue in *Olson* was not whether the juvenile had a right to consult with his parent before consenting to chemical testing; instead, the central issue was whether the juvenile's refusal to take the chemical test was vitiated by the failure of the law enforcement officer to read the implied consent advisory to the juvenile's parent once the parent was contacted by telephone. *See id.* at 260.

[¶ 20] The State correctly asserts that the legislature's 1995 amendment is, in part, likely a response to the outcome of *Olson*. *See Hearing on H.B. 1151 Before the House Transportation Committee*, 54th N.D. Legis. Sess. (Jan. 12, 1995) (testimony of Heidi Heitkamp, Attorney General) ["*Hearing on H.B. 1151*"].

However, it appears the legislature only intended to strike the requirement that officers read the implied consent advisory to a juvenile's parent and remove the diligence requirement from officers' obligation to attempt to contact a juvenile's parent or legal guardian.

[¶ 21] Before the 1995 Legislative Assembly passed the bill amending N.D.C.C. § 39–20–01, Attorney General Heidi Heitkamp presented prepared testimony to members of the legislature. *See Hearing on H.B. 1151, supra* (testimony of Heidi Heitkamp, Attorney General). In her testimony, she describes the *Olson* holding and explains the purpose of the amendment:

> Section 2 of House Bill 1151 retains the responsibility of a law enforcement officer to make an effort to contact the parent of a person under the age of 18 years who has been taken into custody for violating N.D.C.C. § 39–08–01 or an equivalent ordinance. [House Bill 1151] deletes the requirement that the officer advise the parent of the implied consent chemical testing requirements. [It] specifically provides that the attempt to contact or the contacting of a parent or legal guardian is not a precondition to the admissibility of chemical test results or a finding of a consent to or refusal of chemical testing.

*Id.* While the legislative history reveals a legislative intent that the attempt by law enforcement to contact a parent should not be a precondition to the admissibility of chemical test results, it does not reveal a legislative intent to eliminate a juvenile's limited right to consult with his parents once they are successfully contacted. Neither the plain language of the amended statute nor the legislative history reveal a legislative intent to completely eliminate a juvenile's limited right to consult with a parent, guardian, or custodian before de-

ciding whether to consent to chemical testing.

## IV

[¶ 22] The State acknowledges that a driver arrested for driving while under the influence has a limited right to consult with an attorney before undergoing chemical testing. The State points out that, in this case, R.P. did not ask to consult with an attorney; he asked to consult with his parents. The State argues R.P. did not have a statutory right to consult with his parents regarding whether to take the Intoxilyzer test. The State asserts the advice of a parent to a juvenile is not equal to that of an attorney. Thus, the officers in this case did not prevent R.P. from having an opportunity to speak to an attorney. The State further claims that, like an adult, a juvenile impliedly consents to the testing requirements when the individual applies for and receives a driver's license. The State argues that a juvenile has a statutory right only to consult with an attorney before chemical testing, not a right to consult with a parent or another person of choice.

[¶ 23] R.P. contends that his position is bolstered by the law pertaining to non-juveniles. Other persons in custody for driving under the influence are provided a limited statutory right to consult with counsel before deciding whether to submit to chemical testing. R.P. argues that his right to consult with his parents is analogous to an adult's right to consult with counsel. R.P. argues the right to consult with his parents before submitting to the Intoxilyzer test was triggered when he telephoned his parents after the accident. The contact with his parents was not initiated by the officers, but the fact the contact was fortuitous does not affect the analysis. The officer had enough time to allow R.P. to consult with his parents before the test without forgoing the officer's goal of conducting a timely test. R.P.'s parents were already in the room and there was a significant window of time remaining after R.P. completed the Intoxilyzer test.

[¶ 24] We now hold coupled with our decision in *Kuntz v. State Highway Com'r*, 405 N.W.2d 285 (N.D.1987), that the right to counsel provision of the Uniform Juvenile Court Act, embodied in N.D.C.C. § 27–20–26, provides juveniles a limited right to counsel before deciding whether to consent to chemical testing under N.D.C.C. § 39–20–01. Like other drivers' right to counsel before deciding whether to consent to chemical testing, a juvenile's right to consult with counsel is a limited right. A juvenile must be given a reasonable opportunity to consult only if doing so does not materially interfere with the test administration. As is the case with judicial consideration of whether a non-juvenile had a reasonable opportunity to consult with his attorney, a totality of the circumstances test applies to determine the reasonableness of a juvenile's opportunity to consult with his or her counsel, parent, guardian, or custodian.

[¶ 25] Here, R.P.'s parents were contacted, albeit by R.P. personally. His mother was at the scene of the accident, and both parents were at the police department while R.P. was in police custody. R.P. requested to speak to them before the Intoxilyzer test was administered. There was ample time to allow R.P. to speak to his parents and still administer a timely and accurate chemical test. The officers denied R.P. an opportunity to consult with his parents before he consented to the Intoxilyzer test. This denial was a violation of R.P.'s limited statutory right to consult with counsel or his parents because allowing R.P. a reasonable opportunity to speak to his parents would not have mate-

rially interfered with administration of the Intoxilyzer test. Suppression of the results of the Intoxilyzer test is the appropriate remedy for the officers' violation of R.P.'s limited right to consult.

## V

[¶ 26] We, therefore, conclude that the juvenile court did not err in affirming the referee's order granting R.P.'s motion to suppress the results of his Intoxilyzer test. We affirm the juvenile court's order affirming the juvenile referee's order.

[¶ 27] GERALD W. VANDE WALLE, C.J., and DONOVAN J. FOUGHTY, D.J., and DANIEL J. CROTHERS, and CAROL RONNING KAPSNER, JJ., concur.

[¶ 28] The Honorable DONOVAN J. FOUGHTY, D.J., sitting in place of SANDSTROM, J., disqualified.