NORTH DAKOTA DEPARTMENT OF
TRANSPORTATION, Plaintiff and
Appellee,

v.

Michael O. DuPAUL, Defendant
and Appellant.

Civ. No. 910341.

Supreme Court of North Dakota.

June 1, 1992.

Gregory B. Gullickson (argued), Asst. Atty. Gen., Atty. Gen. Office, Bismarck, for plaintiff and appellee.

Michael O. DuPaul, pro se.

MESCHKE, Justice.

Michael DuPaul appeals the administrative decision by the Department of Transportation, affirmed by the district court, to revoke his driver's license for refusing an alcohol test. We too affirm the agency's decision.

One night in May 1991, at 11:08 p.m., Minot Police Officer Brian Bonness received a radio dispatch that a light colored Monte Carlo, license number BMH 807, had

struck a viaduct while heading south on Broadway. Bonness cruised south on Broadway and, with radio assistance from Officer Debowey, located a Monte Carlo, license number BMH 507. The driver of the car was weaving in and out of heavy traffic without signalling lane changes. Bonness stopped the car. The driver, Du-Paul, had watery, glassy eyes, and smelled of alcohol. Bonness asked DuPaul to take a field sobriety test. DuPaul refused.

Debowey arrived as a back-up, and asked DuPaul to be seated in the back of the patrol car. DuPaul asked if he was arrested, and the officers told him that he was not. Rather than being seated, DuPaul began backing away, then running, toward a nearby tavern. The officers ran after DuPaul, placed him under arrest, handcuffed him, and drove him to the police station.

At the station, DuPaul repeatedly demanded to see a doctor and a lawyer. Du-Paul claimed that he suffered "ripp[ed] tendons, muscles, ligaments or whatever in the elbow" while being arrested, and that he required medical attention. The officers reported, however, that DuPaul had full, pain-free use of both arms, inconsistent with his claims. A phone and a phone book were given to DuPaul for calling an attorney, but he did not.

Bonness asked DuPaul several times to consent to alcohol testing, and DuPaul only responded, "I want a doctor, and I want a lawyer." DuPaul was read an advisory that explained the consequences of refusing to consent to an alcohol test, was read his *Miranda* rights, and was charged with preventing arrest and with driving under the influence. DuPaul was given another opportunity to consent to testing after being charged, and again he did not affirmatively respond.

Bonness took possession of DuPaul's driver's license, issued him a temporary license, and transported him to the Ward County jail for detention. Later, during the early morning hours, DuPaul posted bond and was released. After release, he went to St. Joseph's Hospital for an "independent" blood alcohol test. At 3:49 a.m., about four and a half hours after he was arrested, DuPaul's blood-alcohol level was 0.06 percent by weight.

At the administrative hearing, the hearing officer found that Officer Bonness had articulable and reasonable grounds to stop DuPaul and to believe that DuPaul was driving while under the influence of liquor, that DuPaul had refused the alcohol test, and that he had failed to cure his refusal. The agency revoked DuPaul's driver's license for one year.

DuPaul appealed to the district court. That court affirmed the agency decision. DuPaul appeals, arguing that Officer Bonness lacked any reason to make an investigative stop; that the initial arrest was improperly grounded on a repealed law; that his right to counsel was denied; that his right to alcohol testing by a doctor was denied; and that license revocation under the Implied Consent law is unconstitutional.

Our review of a district court decision on a license suspension under NDCC 39–20–05 is governed by the Administrative Agencies Practice Act. NDCC 28–32–01(1). We review the record of the administrative agency, not the district court's ruling. *Schwind v. Director, North Dakota Department of Transportation,* 462 N.W.2d 147 (N.D.1990). We must affirm the agency's decision unless we conclude that: 1) the decision is not in accordance with the law; 2) the decision violates the constitutional rights of the appellant; 3) provisions of the Administrative Agencies Practices Act were not complied with in the proceedings before the agency; 4) the agency's rules or procedures have not afforded the appellant a fair hearing; 5) the agency's findings are not supported by a preponderance of the evidence; or 6) the conclusions of law and the agency's decision are not supported by its findings of fact. NDCC 28–32–19. We do not make independent findings or substitute our judgment for that of the agency. *Ehrlich v. Backes,* 477 N.W.2d 211, 213 (N.D.1991). Rather, we consider whether the agency reasonably reached its factual determinations by the greater weight of all the evidence.

DuPaul argues that Officer Bonness improperly stopped his car. " '[A]n officer must have an articulable and reasonable suspicion that a motorist is violating the law in order to legally stop a vehicle.' " *State v. Smith*, 452 N.W.2d 86, 87 (N.D.1990). Before the stop, Bonness received a radio dispatch describing a car that had struck a viaduct, and a second radio message that the car's "driving was awful." Reasons for a suspicion need not be from the officer's personal observations alone, but may also be derived from another person or officer. *State v. Bryl*, 477 N.W.2d 814, 816 (N.D.1991). Bonness spotted DuPaul weaving in and out of traffic without signalling lane changes.[1] DuPaul's car and license number closely matched the radioed description and location. The agency found that Bonness had "articulable and reasonable grounds to stop Mr. DuPaul when [Bonness] observed [DuPaul's] driving." Because the evidence reasonably supports that finding, we affirm it.

Second, DuPaul argues that he was improperly arrested for "resisting an officer," a law that had been repealed.[2] The arrest reports by Bonness and Debowey, however, show that DuPaul was charged with violating NDCC 12.1–08–02, "preventing arrest or discharge of other duties,"[3] and NDCC 39–08–01, driving "a vehicle while under the influence of intoxicating liquor...."[4] DuPaul had the odor of alcohol, his eyes were glassy, and he refused field sobriety testing.

In addition, the agency found that DuPaul was placed in handcuffs for fleeing and resisting an officer. DuPaul's refusal to cooperate, his physical resistance during the investigation, and his attempt to flee furnished probable cause to arrest him for preventing an officer from discharging his official duties. NDCC 12.1–08–02(1). The fact, that Bonness did not immediately arrest DuPaul, did not authorize DuPaul to leave during a reasonable and non-coercive stop and investigation. *Compare State v. Ritter*, 472 N.W.2d 444, 449 (N.D.1991). We conclude that DuPaul was properly arrested and charged with preventing discharge of an officer's duties and with driving under the influence of alcohol.

Third, DuPaul argues that he was denied his right to counsel. At the police station, DuPaul repeatedly requested a lawyer. Upon arrival, Bonness released DuPaul from his handcuffs, gave him a seat at a desk with a phone and a phone

---

1. NDCC 39–10–38, on *Turning movements and required signals,* says:
 1. No person may turn a vehicle or move right or left upon a roadway unless and until such movement can be made with reasonable safety without giving an appropriate signal in the manner hereinafter provided.
 2. A signal of intention to turn or move right or left when required must be given continuously during not less than the last one hundred feet [30.48 meters] traveled by the vehicle before turning.

\* \* \* \* \* \*

2. NDCC 29–06–13.1, on *Resisting peace officer,* was repealed by S.L.1975, ch. 106, § 673.

3. NDCC 12.1–08–02, on *Preventing arrest or discharge of other duties,* says:
 1. A person is guilty of a class A misdemeanor if, with intent to prevent a public servant from effecting an arrest of himself or another for a misdemeanor or infraction, or from discharging any other official duty, he creates a substantial risk of bodily injury to the public servant or to anyone except himself, or employs means justifying or requiring substantial force to overcome resistance to effecting the arrest or the discharge of the duty. A

person is guilty of a class C felony if, with intent to prevent a public servant from effecting an arrest of himself or another for a class A, B, or C felony, he creates a substantial risk of bodily injury to the public servant or to anyone except himself, or employs means justifying or requiring substantial force to overcome resistance to effecting such an arrest.

\* \* \* \* \* \*

4. NDCC 39–08–01, on *Persons under the influence of intoxicating liquor or any other drugs or substances not to operate vehicle—Penalty,* says:
 1. A person may not drive or be in actual physical control of any vehicle upon a highway or upon public or private areas to which the public has a right of access for vehicular use in this state if any of the following apply:
 a. That person has a blood alcohol concentration of at least ten one-hundredths of one percent by weight at the time of the performance of a chemical test within two hours after the driving.
 b. That person is under the influence of intoxicating liquor.

\* \* \* \* \* \*

book, and thus gave him an opportunity to call a lawyer. DuPaul did not do so. The agency found that DuPaul had "the opportunity to contact an attorney and to make telephone calls, and failed to do so." We agree with that finding.

Claiming indigency, DuPaul argues that the police department should have supplied him with a court-appointed attorney. In criminal proceedings, "every indigent defendant is entitled to have counsel appointed at public expense ... at every stage of the proceedings from initial appearance before a magistrate ... in all felony cases" or "in all non-felony cases unless the magistrate has determined that sentence upon conviction will not include imprisonment." NDRCrimP 44. This right does not commence until the moment that an indigent accused is taken before a judge or magistrate for an "initial appearance." *Id.* DuPaul did not have a right to a court-appointed attorney for his arrest, booking, and testing at the police station—events that all took place before his initial court appearance.

When arrested for driving under the influence and before consent to alcohol testing, an accused does have a limited and personal right to contact and to consult an attorney of his choice, unless that consultation unreasonably interferes with testing. *Ehrlich v. Backes*, 477 N.W.2d 211. Indigency does not enlarge this limited right; it does not obligate the arresting officer to find an attorney for the accused. *Id.* at 214. DuPaul had a reasonable opportunity to consult with an attorney, and chose not to exercise that opportunity. He has not shown that his opportunity to contact an attorney by telephone was impeded or delayed in any way. *Compare State v. Messner*, 481 N.W.2d 236 (N.D. 1992). We conclude, therefore, that DuPaul was not denied his right to counsel.

DuPaul's fourth argument is that he never refused alcohol testing. Rather, he argues that "only a doctor" can administer a blood alcohol test and that, by his statement, "I want a doctor," he consented to testing by a doctor. The law does not authorize the driver to choose the specific test to be administered, nor to choose a specific person to administer the test. *Clairmont v. Hjelle*, 234 N.W.2d 13 (N.D.1975) (refusal to submit to test chosen by arresting officer constitutes refusal). As long as the "test, or tests, ... [are] administered at the direction of a law enforcement officer," (NDCC 39–20–01), by a "physician, or a qualified technician, chemist, or registered nurse," (NDCC 39–20–02), or by "an enforcement officer certified as a chemical test operator by the state toxicologist," (NDCC 39–20–14), a test is proper. No matter what the driver would prefer, a test by an authorized person directed by a law enforcement officer is the statutory objective, although not performed by a physician. Even if DuPaul was willing to consent to a test by a doctor, as he now claims, such a constricted consent is an effective refusal to take the test "administered at the direction of [the] law enforcement officer."

The failure to submit to a test, whether by stubborn silence or by a negative answer, can be a refusal. *See Hammeren v. North Dakota State Highway Commissioner*, 315 N.W.2d 679 (N.D. 1982). Accordingly, the agency properly found that, "[a]t no time did Mr. DuPaul agree to be tested after he had been advised of the consequences. The failure ... to respond after being requested to take a blood test and his response only of wanting a doctor and a lawyer constitutes a refusal to be tested."

DuPaul was entitled to a reasonable opportunity for an *additional* test by a person of his own choosing. *State v. Messner.* However, his "independent" test at the hospital after release from the county jail does not cure DuPaul's refusal to be tested while in police custody. *Asbridge v. North Dakota State Highway Commissioner*, 291 N.W.2d 739 (N.D.1980) (refusal to submit to chemical test cannot be cured after driver leaves police custody).

Finally, DuPaul argues that the law deprives him of his constitutionally protected right to a driver's license because he needs it for his job as a travelling sales-

man. No doubt driving is an important privilege today, but a driver's license is not constitutionally guaranteed. *State v. Kouba*, 319 N.W.2d 161 (N.D.1982). Rather, a driver's license is subject to control and regulation by the state, although the privilege is protected by due process. *Powell v. Hjelle*, 408 N.W.2d 737 (N.D.1987). A regulated privilege is not a right.

 A driver's license may be suspended or revoked by the state for a violation of laws "intended to make travel on our highways reasonably safe for all." *Kouba* at 163. For this important purpose, the law " 'attempt[s] to reduce the [carnage] on our highways, part of which is due to the driver who has imbibed too freely of intoxicating liquor.' " *Ehrlich v. Backes*, 477 N.W.2d at 214 (Erickstad, Chief Justice, specially concurring). By arguing blindly that the state cannot "coerce or force under duress or threaten that people will not receive a license unless they [consent to testing]," DuPaul refuses to recognize the public's need for highway safety.

 Revocation of DuPaul's license was not arbitrary. The legislation allows DuPaul the right, upon request, to an agency hearing before his license is taken away. For a refusal, that hearing is limited to whether the officer had reasonable grounds to stop DuPaul and to believe that his "body contain[ed] alcohol," whether DuPaul was lawfully arrested, and whether DuPaul refused to submit to testing. NDCC 39–20–04. DuPaul's license was taken for a legislated purpose that was reasonably proven at a fairly conducted hearing. We conclude that DuPaul received the process due him constitutionally for revocation of his driving privilege.

We affirm the agency's decision to revoke DuPaul's driver's license for one year for refusing an alcohol test.

ERICKSTAD, C.J., and LEVINE and JOHNSON, JJ., concur.

VANDE WALLE, J., concurs in the result.