Karl JORGENSON, Petitioner and Appellee,

v.

NORTH DAKOTA DEPARTMENT OF TRANSPORTATION, Respondent and Appellant.

Civ. No. 920311.

Supreme Court of North Dakota.

March 24, 1993.

Steven D. Mottinger, Fargo, for petitioner and appellee. No brief filed.

Michele G. Johnson, Asst. Atty. Gen., Bismarck, for respondent and appellant. Submitted on brief.

MESCHKE, Justice.

The North Dakota Department of Transportation appeals a district court judgment reversing a hearing officer's decision to revoke the driving privileges of Karl Bruce Jorgenson for one year for refusal to submit to blood-alcohol testing. We reverse and reinstate the revocation.

At about 2:00 a.m. on April 12, 1992, Highway Patrol Sergeant Edmund Gruchalla saw a vehicle moving east on an avenue in Fargo. The vehicle was weaving and crossing the center and fog lines. Gruchalla followed the vehicle for some distance, activated his red lights, and stopped it. Gruchalla walked up to the vehicle and told Jorgenson "why [he] stopped him." Gruchalla smelled alcohol, noticed Jorgenson's red, bloodshot eyes, and asked him whether he had been drinking. Jorgenson said that "he had a few beers in Casselton."

With Jorgenson still seated in the vehicle, Gruchalla gave him the horizontal gaze nystagmus test; Jorgenson failed on all six indicia. Gruchalla asked Jorgenson to get out of the vehicle, so that he could conduct more field-sobriety tests. After Jorgenson failed the walk-and-turn and one-leg-stand tests, Gruchalla took him to his patrol car to administer the Alco–Sensor on-site screening test. Jorgenson attempted the test several times but "would not give [Gruchalla] a proper sample," so Gruchalla arrested him for driving under the influence of intoxicating liquor.

Gruchalla told Jorgenson that they would go to the Cass County Jail for an Intoxilyzer test of Jorgenson's breath. Instead, Jorgenson wanted a blood test. Gruchalla took Jorgenson to a hospital but, because of problems with Jorgenson's veins, no blood could be drawn. Gruchalla then asked Jorgenson to undergo a urine test, but Jorgenson said that, due to a bladder problem, he could not provide a urine specimen. They went to the Cass County Jail and attempted an Intoxilyzer test, but Jorgenson "wouldn't blow a proper sample," so Gruchalla again took Jorgenson into a restroom for a urine specimen. Jorgenson still "wouldn't provide a urine sample," so he was jailed.

At an administrative hearing requested by Jorgenson, Gruchalla testified that, for the Alco–Sensor test, Jorgenson "would not give me a proper sample," that "he wouldn't blow a proper sample into the Intoxilyzer machine," and that he "wouldn't provide a urine sample." Jorgenson's attorney asked Gruchalla: "You have an opinion as to whether or not Mr. Jorgenson was lying or whether or not he tried to give you a sample?" Gruchalla answered: "Given his attitude over the evening and the other things I ran into, I would consider him to be lying."

The hearing officer concluded that Gruchalla "had reasonable grounds to believe [Jorgenson] committed a moving traffic violation," that he had through his "observations formulated an opinion that [Jorgenson's] body contained alcohol," and that Jorgenson had "refused to submit to the on-site screening test." She further concluded that Gruchalla had reasonable grounds to believe that Jorgenson "had been driving a vehicle while under the influence of intoxicating liquor in violation of section 39–08–01 N.D.C.C. He was placed under arrest. He refused to submit to the test or tests." The hearing officer revoked Jorgenson's operator's license for one year.

Jorgenson appealed to the district court. The district court ruled that Jorgenson "did not affirmatively refuse to submit to a chemical test to determine blood alcohol circumstances," and concluded that "it was error for the Hearing Officer to suspend Jorgenson's driving privileges based on a refusal to submit to testing." The district court reinstated Jorgenson's license. The Department appeals.

Jorgenson "takes the position that there is no law supporting his position...." In effect, Jorgenson concedes that we should reverse. We explain why.

"Any person who operates a motor vehicle on a highway ... in this state is deemed

to have given consent, and shall consent, ... to a chemical test, or tests, of the blood, breath, saliva, or urine for the purpose of determining the alcoholic ... content of the blood." NDCC 39–20–01. Specifically, a driver

> is deemed to have given consent to submit to an on-site screening test or tests of the person's breath for the purpose of estimating the alcohol content of the person's blood upon the request of a law enforcement officer who has reason to believe that the person committed a moving traffic violation ... and in conjunction with the violation ... the officer has, through the officer's observations, formulated an opinion that the person's body contains alcohol.... If such person refuses to submit to such screening test or tests, none may be given, but such refusal is sufficient cause to revoke such person's license or permit to drive.... However, the commissioner must not revoke a person's driving privileges for refusing to submit to a screening test requested under this section if the person provides a sufficient breath, blood, or urine sample for a chemical test requested under section 39–20–01 for the same incident.

NDCC 39–20–14. In this case, the hearing officer found both prerequisites to Gruchalla's request that Jorgenson submit to an on-site screening test: a moving traffic violation by Jorgenson; and Gruchalla's opinion, formulated through personal observation, that Jorgenson's body contained alcohol.

The hearing officer also found that Jorgenson refused to submit to other blood-alcohol tests. These refusals also give the Department reason, under NDCC 39–20–04,[1] to revoke Jorgenson's license. While

Jorgenson unavailingly requested the alternative test of his blood, and later attempted two urine tests, the entire evidence supports the hearing officer's finding that Jorgenson "refused to submit to the test or tests."

In a similar case, *Geiger v. Hjelle*, 396 N.W.2d 302 (N.D.1986), Geiger attempted an Intoxilyzer test and gave two breath samples, both registering "deficient sample." The arresting officer testified at the revocation hearing that Geiger "did not adequately submit to the test." This court concluded that, therefore, "the hearing officer could reasonably have determined that Geiger purposely provided a deficient sample." *Id.* at 303. Affirming the revocation, we concluded that "[c]umulatively, the evidence is certainly sufficient to warrant the finding of a refusal by Geiger." *Id.* "[A] constricted consent is an effective refusal...." *North Dakota Dep't of Transportation v. DuPaul*, 487 N.W.2d 593, 597 (N.D.1992). The cumulative evidence here is sufficient to warrant the finding of refusal by Jorgenson.

We reverse the judgment of the district court and reinstate the Department's revocation of Jorgenson's license.

VANDE WALLE, C.J., and LEVINE, NEUMANN and SANDSTROM, JJ., concur.

---

1. The relevant part of NDCC 39–20–04 says:

   Revocation of privilege to drive motor vehicle upon refusal to submit to testing.
   1. If a person refuses to submit to testing under section 39–20–01 or 39–20–14, none may be given, but the law enforcement officer shall immediately take possession of the person's operator's license if it is then available and shall immediately issue to that person a temporary operator's permit, if the person then has valid operating privileges, extending driving privileges for the next twenty-five days or until earlier terminated by a decision of a hearing officer under section 39–20–05. The law enforcement officer shall sign and note the date on the temporary operator's permit. The temporary operator's permit serves as the commissioner's official notification to the person of the commissioner's intent to revoke driving privileges in this state and of the hearing procedures under this chapter.