Scott v. ND Dept. of Transportation Dir., 557 N.W.2d 385 (N.D. 1996)|N.D. Supreme Court|
Scott v. ND Dept. of Transportation Dir., 557 N.W.2d 385 (N.D. 1996)
[Go to Documents]
Filed Dec. 20, 1996
IN THE SUPREME COURT
STATE OF NORTH DAKOTA
John Scott, Petitioner and Appellant
v.
North Dakota Department of Transportation, Director, Respondent and Appellee
Civil No. 960060
Appeal from the District Court for Cass County, East Central Judicial District, the Honorable Lawrence A. Leclerc, Judge.
AFFIRMED.
Opinion of the Court by Meschke, Justice.
Olson Law Office, 211 South 4th, Suite 101, Grand Forks, ND 58201; argued by Robin L. Olson; Nelson Law Office, 111 South 9th Street, Fargo, ND 58103, for petitioner and appellant. Appearance by Brian W. Nelson. Candace A. Prigge (argued), Assistant Attorney General, Attorney General's Office, 900 East Boulevard Avenue, Bismarck, ND 58505-0041, for respondent and appellee.
[557 N.W.2d 386]
Scott v. Dep't of Transp., Dir.
Civil No. 960060
Meschke, Justice.
John Michael Scott appeals from a district court judgment affirming the North Dakota Department of Transportation's decision to revoke Scott's license for one year because he refused to submit to an on-site chemical screening test. We affirm.
Officer Paul Holte used stationary radar to clock a speeding motorcycle driven by Scott. After Holte stopped Scott, he smelled alcohol and asked Scott to sit in the back of his patrol car. Because Scott did not have his driver's license with him, Holte had to obtain Scott's driver information from his mobile data terminal. While waiting for this information, Holte again smelled a strong odor of alcohol, and saw that Scott's eyes were red, watery, and bloodshot.
Holte asked Scott to take some field sobriety tests. Scott said he had a bad ankle and bad wrist so he could not do any balance tests, and he was dyslexic so he could not recite the ABCs. Holte then asked Scott to take the horizontal gaze nystagmus test (HGN) and asked about the smell of alcohol. Scott failed the HGN test, and admitted he had been drinking.
Holte believed that Scott's body contained alcohol, and requested an on-site chemical screening test. Officer Joseph P. Johnson, a certified chemical test operator, arrived with an ALERT device. Johnson tried to administer the ALERT test, but after several attempts, there was not enough air in the machine for an adequate test sample. Johnson suspected that Scott was blocking the mouthpiece with his tongue because the clear mouthpiece did not fog up when Scott blew into it. Finally, Johnson requested an ALCO-SENSOR, a device requiring very little air for an adequate test sample.
Before the ALCO-SENSOR arrived, Johnson told Scott that he did not believe Scott was trying. He informed Scott that the Department of Transportation could suspend his license for up to three years for failure to comply with an on-site screening test.
Scott made one attempt on the ALCO-SENSOR, but Johnson could not hear or feel any air going into the machine. Johnson told Holte that he considered Scott's actions to be a refusal. After repeating to Scott the consequences of a refusal, Holte served Scott with a Report and Notice form to begin the administrative process to revoke Scott's license for refusing an on-site test.
Because he did not believe he had enough evidence to arrest Scott for driving under the influence, Holte released Scott after having detained him for 53 minutes. Holte told Scott "he was free to go and get whatever test he wanted to rebut the state's charge of a refusal."
At the license revocation hearing, Scott tried to cure his refusal by offering an alleged blood test to show he did not have alcohol in his system within two hours after his traffic violation. The hearing officer admitted the test for what it was worth, but gave it little weight because "the record does not reflect sufficient information regarding the collection of the blood sample and its subsequent testing."(1) The hearing officer
[557 N.W.2d 387]
concluded, in any case, that refusal of an on-site screening test "cannot be cured by submitting to a chemical test which was not requested by the officer," and revoked Scott's license for one year.
On appeal, Scott argues, if he did refuse, the hearing officer should have accepted his independent blood test as a cure for his refusal. Scott contends that, if he had been arrested, he could have cured a refusal of on-site screening by submitting to a test, so he should be able to do so, too, when he has not been arrested. Scott argues:
It is unreasonable to believe that the legislature intended that a person who has not been arrested, has not been charged with a crime, should lose his driving privileges because an officer subjectively determined that he had refused to submit to an onsite screening test without a remedy.
We disagree because the legislature clearly did not authorize a driver to cure a refusal of on-site screening if he was not arrested.
On-site chemical screening tests are authorized in NDCC 39-20-14:
Screening tests. Any person who operates a motor vehicle upon the public highways of this state is deemed to have given consent to submit to an onsite screening test or tests of the person's breath for the purpose of estimating the alcohol content of the person's blood upon the request of a law enforcement officer who has reason to believe that the person committed a moving traffic violation or was involved in a traffic accident as a driver, and in conjunction with the violation or the accident the officer has, through the officer's observations, formulated an opinion that the person's body contains alcohol. . . . The results of such screening test must be used only for determining whether or not a further test shall be given under the provisions of section 39-20-01. The officer shall inform the person that refusal of the person to submit to a screening test will result in a revocation for up to three years of that person's driving privileges. If such person refuses to submit to such screening test or tests, none may be given, but such refusal is sufficient cause to revoke such person's license or permit to drive in the same manner as provided in section 39-20-04, and a hearing as provided in section 39-20-05 and a judicial review as provided in section 39-20-06 must be available. However, the commissioner must not revoke a person's driving privileges for refusing to submit to a screening test requested under this section if the person provides a sufficient breath, blood, or urine sample for a chemical test requested under section 39-20-01 for the same incident.
This section permits someone who has refused an on-site screening test to later cure if "the person provides a sufficient breath, blood, or urine sample for a chemical test requested under section 39-20-01 for the same incident." Under NDCC 39-20-01:
The test or tests must be administered at the direction of a law enforcement officer only after placing the person . . . under arrest and informing that person that the person is or will be charged with the offense of driving or being in actual physical control of a vehicle upon the public highways while under the influence of intoxicating liquor, drugs, or a combination thereof.
In that event, NDCC 39-20-02 also authorizes a person tested under NDCC 39-20-01 to obtain an independent test to rebut the officer's chosen test.
An officer cannot administer a test under NDCC 39-20-01 unless and until he has arrested the driver. Here, Officer Holte did not arrest Scott because he did not feel he had sufficient probable cause for an arrest.(2) Scott argues, however, that he could obtain an independent test under NDCC 39-20-01 because his extended detention was unreasonable and equivalent to an arrest.
A police officer may temporarily detain an offender at the scene of the traffic
[557 N.W.2d 388]
violation. State v. Mertz, 362 N.W.2d 410, 412 (N.D. 1985). In Mertz, we concluded: "A reasonable period of detention includes the amount of time necessary for the officer to complete his duties resulting from the traffic stop." Id. Here, Scott was detained for 53 minutes. Although it was Scott's own lack of cooperation that lengthened his detention, we agree that 53 minutes is arguably an unreasonable time here.(3) However, we disagree that Scott can cure his refusal even if he was functionally arrested.
An arrest by itself is not enough to trigger the required testing under NDCC 39-20-01. The arresting officer must also inform the driver that he is or will be charged with driving under the influence or being in actual physical control. See Throlson v. Backes, 466 N.W.2d 124, 127 (N.D. 1991)(holding failure to inform driver about alcohol charge upon arrest made test request under NDCC 39-20-01 ineffective). Here, Holte never informed Scott that he was or would be charged with an alcohol offense, and the officer did not direct a test under NDCC 39-20-01.(4)
Even if his own test cannot be used to cure his refusal, Scott argues his independent test rebuts Holte's opinion that Scott's body contained alcohol. Scott contends his refusal of a screening test should be disregarded because his test disproves Holte's opinion as a basis for requesting the screening test. However, Holte only had to have the opinion that Scott's body contained alcohol; he did not have to be certain. There was sufficient evidence to support the reasonableness of Holte's belief that Scott's body contained alcohol.
In any case, Scott's independent test had virtually no evidentiary value. We have stressed that an independent test cannot cure someone's refusal to be tested unless that person has been in continuous police custody. North Dakota Dep't of Transp. v. DuPaul, 487 N.W.2d 593, 597 (N.D. 1992); Asbridge v. North Dakota State Highway Com'r, 291 N.W.2d 739, 750 (N.D. 1980). The complete lack of foundation for Scott's test confirms the soundness of this rule. The test was admitted in the form of an unsigned slip of paper, and Scott's only attempt to authenticate it was unsuccessful. We conclude the hearing officer reasonably assessed Scott's proffered test result as having negligible weight.
Scott urges that before there can be a refusal, there must be an affirmative refusal. However, we have upheld other license revocations when an accused driver failed to give an adequate test sample. Jorgenson v. North Dakota Dep't of Transp., 498 N.W.2d 167, 169 (N.D. 1993); Geiger v. Hjelle, 396 N.W.2d 302, 303 (N.D. 1986). We conclude there was sufficient evidence for the finding of a refusal by Scott.
We affirm revocation of Scott's license.
Herbert L. Meschke
Dale V. Sandstrom
William A. Neumann
Mary Muehlen Maring
Gerald W. VandeWalle, C.J.
Footnotes: 1. Scott's only attempt to authenticate the test was through the testimony of Officer Johnson, but Johnson had never seen a test like it before. 2. We are skeptical of Holte's belief that he did not have probable cause to arrest Scott. As City of Langdon v. Delvo, 390 N.W.2d 51 (N.D. 1986) and State v. Prigge, 437 N.W.2d 520 (N.D. 1989), illustrate, we have upheld probable cause for arrest under like circumstances. 3. Scott also argues that the trial court should not have admitted his admission of drinking because Holte did not give him his Miranda warnings even though he was in a custodial situation. However, Scott made his admission shortly after he was stopped and before his detention could have become unreasonable. 4. Scott complains that Holte misled him to believe he could cure his refusal on his own. However, it is the officer, not the driver, who decides whether a test will be administered under NDCC 39-20-01. Scott's mistaken belief that he could cure his refusal does not change the fact that Holte decided not to arrest or test Scott.