2019 ND 161

City of West Fargo,                                    Plaintiff and Appellant

v.

Tyler Clark Williams,                                  Defendant and Appellee

No. 20180447

Appeal from the District Court of Cass County, East Central Judicial District, the Honorable Thomas R. Olson, Judge.

REVERSED AND REMANDED.

Opinion of the Court by McEvers, Justice.

Stephen R. Hanson II, West Fargo, ND, for plaintiff and appellant.

Luke T. Heck (argued) and Drew J. Hushka (on brief), Fargo, ND, for defendant and appellee.

**City of West Fargo v. Williams**

**No. 20180447**

**McEvers, Justice.**

[¶1]    The City of West Fargo appeals from a district court order suppressing evidence of Tyler Clark Williams' refusal to submit to a chemical test, arguing N.D.C.C. § 39-20-02 contemplates an arrestee only has a statutory right to an independent test if he has already submitted to the chemical test requested by law enforcement.   We reverse the district court order and remand for proceedings consistent with this opinion.

I

[¶2]    On May 7, 2018, a law enforcement officer conducted a traffic stop on Williams.  Upon speaking with Williams, who admitted he had been drinking, the officer conducted various field sobriety tests.  After Williams completed the field sobriety tests, the officer read Williams the implied consent advisory and asked him to submit to an on-site screening test.  Williams stated he would rather take a blood test.  The officer responded a blood test was not available and that the only available test was the breath screening test.  The officer repeated the implied consent advisory and then Williams agreed to take the breath screening test.  Immediately prior to the administration of the screening test, Williams again asked why he could not have a blood test and the officer responded he did not have a blood kit in his car.  The breath test was administered, and a result above the legal limit caused the officer to arrest Williams for driving under the influence.  After he was arrested, Williams asked why he was not allowed to refuse the breath screening test and the officer replied Williams *was* allowed to refuse the test but the officer did not have the tools to complete a blood test in his car.  The officer stated that when "we're all said and done," Williams could go get a blood test at a hospital.

1

[¶3]     Once they arrived at the jail, the officer read Williams the implied consent advisory and requested a chemical breath test, which Williams refused.  After Williams' refusal, the officer again explained Williams could get a blood test at a hospital at his own expense.  Williams was charged under West Fargo City Ordinance 13-0203 with driving under the influence of intoxicating liquor–refusal.

[¶4]     Prior to trial, Williams moved to suppress evidence of his refusal, arguing he was not afforded a reasonable opportunity to obtain an independent blood test.  At the motion hearing, the arresting officer testified and a video of the traffic stop and arrest was introduced as an exhibit.  The district court granted the motion to suppress, finding under the totality of the circumstances Williams was not given a reasonable opportunity to secure an independent test.  The court also found that although Williams refused the chemical test, he was an individual tested under N.D.C.C. § 39-20-02, because he submitted to the on-site screening test.

II

[¶5]     This Court reviews a district court's order on a motion to suppress as follows:

> This Court defers to the district court's findings of fact and resolves conflicts in testimony in favor of affirmance.  This Court will affirm a district court decision regarding a motion to suppress if there is sufficient competent evidence fairly capable of supporting the district court's findings, and the decision is not contrary to the manifest weight of the evidence.  Questions of law are fully reviewable on appeal, and whether a finding of fact meets a legal standard is a question of law.

*State v. Hansford*, 2019 ND 52, ¶ 12, 923 N.W.2d 113 (citation omitted).  "Statutory interpretation is a question of law."  *S & B Dickinson Apartments I, LLC v. Stark Cty. Bd. of Comm'rs*, 2018 ND 158, ¶ 10, 914 N.W.2d 503.

A

[¶6]     In its order granting suppression, the district court found that since Williams was not given a reasonable opportunity to secure an independent test, he was denied the ability to cure his refusal.

[¶7] The City argues the district court incorrectly relied on *N.D. Dep't of Transp. v. DuPaul*, 487 N.W.2d 593, 597 (N.D. 1992), regarding the existence of a right to an independent test in the context of a test refusal.

[¶8] In *DuPaul*, the driver was arrested on suspicion of driving under the influence, refused to take a field sobriety test, and later refused to submit to alcohol testing after being asked to do so several times. 487 N.W.2d 593, 595. Instead, DuPaul asked for a doctor and a lawyer. *Id*. After being charged with driving under the influence and preventing arrest, law enforcement officers again asked for DuPaul's consent to alcohol testing, and he did not affirmatively respond. *Id*. After DuPaul was taken to jail, he posted bond, was released, and went to the hospital for an independent blood alcohol test several hours after the time of his arrest. *Id*. On appeal, DuPaul argued he never actually *refused* alcohol testing, and that his request for a doctor indicated his consent to testing by a doctor. *Id*. at 597. This Court held that DuPaul's independent test at the hospital after his release from jail did not *cure his refusal* to be tested while in police custody. *Id*. This Court noted DuPaul was entitled to "a reasonable opportunity for an *additional* test by a person of his own choosing." *Id*. However, the holding in *DuPaul* is clear, a refusal cannot be cured by an independent test after the driver is released from police custody. To the extent that the district court relied on *DuPaul* to show the officer misinformed Williams on how to obtain an independent test, the court was correct. However, this Court did not analyze in *DuPaul* whether an independent test must be a "test . . . *in addition* to any administered at the direction of a law enforcement officer," as referenced by N.D.C.C. § 39-20-02 (emphasis added).

[¶9] The district court also relied on *Scott v. N.D. Dep't of Transp.*, 557 N.W.2d 385 (N.D. 1996), for the proposition that an independent test can cure an alleged refusal so long as the motorist has been in continuous police custody. In *Scott*, this Court held that N.D.C.C. § 39-20-02 "authorizes a person tested *under NDCC 39-20-01* to obtain an independent test *to rebut the officer's chosen test*." 557 N.W.2d at 387 (emphasis added). This Court in *Scott* also noted that law enforcement cannot

3

administer a test under N.D.C.C. § 39-20-01 "unless and until he has arrested the driver," and informed the driver that he is or will be charged with driving under the influence or being in actual physical control. *Id*. at 387-88. We further stated, "[w]e have stressed that an independent test cannot cure someone's refusal to be tested unless that person has been in continuous police custody." *Id*. at 388. To the extent that we may have previously implied a refusal can be cured with an independent test without also taking the chemical test requested by law enforcement, we hold now it cannot. However, in some cases, that reasonable opportunity for an independent test may arise before a test has been administered at the direction of a law enforcement officer. *See State v. Dressler*, 433 N.W.2d 549, 550 (N.D. Ct. App. 1988).

[¶10] Here, contrary to the district court's finding, the record does not reflect Williams requested an additional test after his refusal of the chemical test. Had Williams requested to submit to testing in order to cure his refusal, he would have had to consent to the test of the law enforcement officer's choosing. *See* N.D.C.C. § 39-20-01. Only then would his right to an independent additional test arise. Williams did not consent or submit to any chemical testing requested by law enforcement *after* being arrested and informed of his charges; the only testing that took place (field sobriety and on-site breath screening test) occurred prior to arrest and information of charges. Therefore, Williams was not denied a reasonable opportunity to cure his refusal.

B

[¶11] The City argues the district court erred by granting Williams' motion to suppress because the plain language of N.D.C.C. § 39-20-02 contemplates that an arrestee only has a statutory right to an independent test if he has already submitted to the chemical test requested by law enforcement, and Williams was not an "individual tested" by virtue of his submission to the on-site screening test. The City contends the statute's reference to "any administered" tests refers to chemical tests,

4

not on-site screening tests, because a breath screening test is inadmissible regardless of whether an arrestee obtains an additional test.

[¶12] We have previously stated "[u]nder N.D.C.C. § 39-20-01, law enforcement dictates which type of chemical test for intoxication will be administered and where the test will be conducted." *Lange v. N.D. Dep't of Transp.*, 2010 ND 201, ¶ 6, 790 N.W.2d 28. We have also recognized N.D.C.C. § 39-20-02 provides that an individual arrested for intoxication "may have a medically qualified individual of their choosing . . . administer an additional chemical test for intoxication, which is independent of the test administered by law enforcement." *Lange*, at ¶ 6. When an arrestee is denied the right to an independent chemical test under N.D.C.C. § 39-20-02, the results of the chemical tests administered at the direction of law enforcement may be suppressed or charges may be dismissed. *Id*.

[¶13] Section 39-20-02, N.D.C.C., "Individuals qualified to administer test and opportunity for additional test," reads, in pertinent part:

> The individual tested may have an individual of the individual's choosing, who is medically qualified to draw blood, administer a chemical test or tests *in addition to any administered at the direction of a law enforcement officer* with all costs of an additional test or tests to be the sole responsibility of the individual charged. The failure or inability to obtain an *additional* test by an individual does not preclude the admission of the test or tests taken at the direction of a law enforcement officer.

(Emphasis added.) When interpreting a statute, "we give words their plain, ordinary and commonly understood meaning." *Kroschel v. Levi*, 2015 ND 185, ¶ 9, 866 N.W.2d 109 (citation omitted); *see also* N.D.C.C. § 1-02-02. We interpret statutes to give meaning and effect to every word, phrase, and sentence, and will not adopt a construction "which would render part of the statute mere surplusage." *Sorenson v. Felton*, 2011 ND 33, ¶ 15, 793 N.W.2d 799 (citation omitted).

[¶14] Williams' reading of the statute ignores the "in addition" language which clearly contemplates that at least one chemical test be given in order to allow the "additional test" under N.D.C.C. § 39-20-02. "Addition" means "1. An adding of two

or more numbers to get a number called the sum[;] 2. a joining of a thing to another thing[;] 3. a thing or part added." *Webster's New World Dictionary*, 16 (2nd ed. 1980). "Additional," an adjective used to modify or describe the word "test," means "added; more; extra." *Id*.

[¶15] Furthermore, the "additional test," provided for in N.D.C.C. § 39-20-02 is in addition to "*any administered.*" Under the district court's reasoning, on-site screening tests count as "any administered" tests, but a closer analysis of the statutory language reveals otherwise. We have previously relied on the principle of *ejusdem generis* to interpret statutory language:

> Under the principle of *ejusdem generis*, general words following particular and specific words are not given their natural and ordinary sense, standing alone, but are confined to persons and things of the same kind or genus as those enumerated. In applying the rule of *ejusdem generis*, we must keep in mind the admonition that our primary purpose is always to carry out the intent of the legislature. The rule accomplishes the purpose of giving effect to both the particular and the general words, by treating the particular words as indicating the class, and the general words as extending the provisions of the statute to everything embraced in that class, though not specifically named by the particular words.

*Olson v. Job Service N.D.*, 2013 ND 24, ¶ 7, 827 N.W.2d 36 (internal citations and quotations omitted). Because the statute enumerates the particular "genus"—chemical tests—prior to stating the general—"any administered"—the "any" must be confined to tests of the kind previously and particularly articulated: chemical tests.

[¶16] An on-site screening test is described in N.D.C.C. § 39-20-14(3) as a test to determine whether further testing shall be given under N.D.C.C. § 39-20-01. Under N.D.C.C. § 39-20-01(1), a chemical test means "any test to determine the alcohol concentration or presence of other drugs, or combination thereof, in the individual's blood, breath, or urine, approved by the director of the state crime laboratory or the director's designee under this chapter." The chemical tests must only be administered after placing the individual under arrest and informing the individual of his charges

6

or forthcoming charges. N.D.C.C. § 39-20-01(2) (exceptions not noted). Reading these statutes in context, an on-site screening test is not a chemical test as described in N.D.C.C. § 39-20-01(1).

[¶17] We agree that a plain reading of N.D.C.C. § 39-20-02 requires that the right to an additional independent test only arises when the driver submits to the chemical test requested by law enforcement.


C

[¶18] Williams cites to Arizona and Montana caselaw to advance his argument that there exists an inherent right to seek independent testing. The City responds to Williams' argument by stating Williams failed to present the inherent right argument to the district court and thus presents the argument to this Court for the first time on appeal. In Williams' notice of his motion to suppress evidence submitted before the court, he stated he moved "on grounds that his *statutory right* to an independent blood test was violated." Williams again articulated his argument was rooted in a statutory right, not an inherent right, at the hearing on the motion to suppress, referring to Williams' right as "his statutory right." We have held that "[t]he purpose of an appeal is to review the actions of the trial court, not to grant the appellant an opportunity to develop and expound upon new strategies or theories." *Spratt v. MDU Res. Grp., Inc.*, 2011 ND 94, ¶ 14, 797 N.W.2d 328. Because Williams raises this new inherent right theory for the first time on appeal, we decline to address it.


III

[¶19] We have considered the remaining issues and arguments raised by the parties and conclude they are either unnecessary to our decision or are without merit.

[¶20]  We reverse the district court's order suppressing evidence and remand for proceedings consistent with this opinion.

[¶21]  Lisa Fair McEvers
      Daniel J. Crothers
      Jerod E. Tufte
      Jon J. Jensen
      Gerald W. VandeWalle, C.J.