**Steven Michael THROLSON, Appellee,**

v.

**Richard J. BACKES, Director, North Dakota Department of Transportation, Appellant.**

**Civ. No. 900232.**

Supreme Court of North Dakota.

Feb. 21, 1991.

No appearance made or brief filed, on behalf of appellee.

Robert E. Lane (argued), Asst. Atty. Gen., Atty. Gen. Office, Bismarck, for appellant.

LEVINE, Justice.

The Director of the North Dakota Department of Transportation appeals from a district court judgment reversing the Department's suspension of Steven Throlson's driver's license. We affirm.

On December 2, 1989, Deputy Sheriff Raymond Dingeman observed Throlson's vehicle traveling with its headlights turning on and off. The vehicle stopped by the side of the road and Deputy Dingeman stopped his patrol car to render assistance. Deputy Dingeman approached the vehicle and talked to Throlson, who had been alone in the vehicle. Noting that Throlson's eyes were bloodshot, that there was a strong odor of alcohol and that Throlson's speech was slurred, Dingeman asked to see Throlson's driver's license.. When Throlson said he didn't have his driver's license, Dingeman ran a check and learned that Throlson's license was under suspension. Dingeman then informed Throlson that he "was going to have to come with me to the jail because he was driving under suspension." Throlson was not informed that he was under arrest for driving under the influence of alcohol.

While driving to the jail, Dingeman asked Throlson if he would perform field sobriety tests when they arrived, and Throlson indicated that he would not. Upon arriving at the jail, Dingeman read Throlson the implied consent advisory and then asked if Throlson would submit to a blood test. Throlson responded in profane terms that he would not give a blood test. Throlson had still not been advised that he was under arrest for driving under the influence.

Dingeman's testimony about what happened next provides the background for the dispute on appeal. Dingeman testified:

"Well, then the jail ... I told the jailer to, you know, book him in for DUS and

DUI. I waited about ten minutes or so and I come back up and I asked Steve again, I said, 'Will you give me a blood test?' At that time he replied no. He just said no. And he was booked in the jail at that time."

Throlson requested and received an administrative hearing. The hearing officer found that Throlson had been arrested and had refused the test in violation of Section 39–20–01, N.D.C.C. Throlson's license was suspended for two years.

Throlson appealed to the district court. The district court concluded that Throlson had not been informed that he was under arrest for DUI, as required by Section 39–20–01, N.D.C.C., and that, accordingly, there had been no legally effective request for a test by the officer or refusal by Throlson. The district court reversed the agency decision and the Director has appealed.

■ Our review of administrative agency decisions is governed by Section 28–32–19, N.D.C.C., and is limited to consideration of the following questions: (1) Are the findings of fact supported by a preponderance of the evidence? (2) Are the conclusions of law sustained by the findings of fact? (3) Is the agency decision supported by the conclusions of law? *E.g., Lorenzen v. State Highway Commissioner*, 401 N.W.2d 526, 527–528 (N.D.1987). In determining whether the agency's findings of fact are supported by a preponderance of the evidence, the applicable standard is whether a reasoning mind could reasonably have determined that the facts or conclusions were supported by the weight of the evidence. *E.g., Evans v. Backes*, 437 N.W.2d 848, 849 (N.D.1989).

■ The scope of an administrative hearing on a refusal to submit to testing is limited by Section 39–20–05(3), N.D.C.C. Pursuant to the statute, the hearing may cover only three issues: (1) whether the officer had reasonable grounds to believe the person had been driving or was in actual physical control of a vehicle in violation of Section 39–08–01, N.D.C.C., or equivalent ordinance; (2) whether the person was placed under arrest; and, (3)

whether the person refused to submit to the test or tests.

Curiously, the Director has raised the following two issues on appeal: whether the officer had reasonable grounds to believe that Throlson was driving while under the influence and whether Throlson was lawfully arrested. The district court, however, based its reversal of the agency decision upon lack of evidence demonstrating a refusal under Section 39–20–01, N.D.C.C. Although we do not defer to the district court's review, we look to its analysis for guidance in our review of the agency decision. *Bickler v. North Dakota State Highway Commissioner*, 423 N.W.2d 146, 147 (N.D.1988).

■ Section 39–20–01, N.D.C.C., requires that chemical tests to determine a driver's blood alcohol content "must be administered at the direction of a law enforcement officer only after placing the person … under arrest and informing that person that the person is or will be charged with the offense of driving or being in actual physical control of a vehicle upon the public highways while under the influence of intoxicating liquor, drugs, or a combination thereof." Section 39–20–04(1), N.D.C.C., provides that "[i]f a person refuses to submit to testing under section 39–20–01 … none may be given," but the person's license is subject to revocation for up to three years.

It is axiomatic that before there can be a "refusal" to submit to testing under Section 39–20–01, there must be a valid request for testing under the statute. In an analogous situation, we have held that a driver's failure to submit to testing, after being denied the statutory right to a reasonable opportunity to consult with an attorney before deciding whether to submit to the test, does not constitute a "refusal" for purposes of revoking the person's license under Chapter 39–20. *Evans v. Backes, supra*, 437 N.W.2d at 850; *Kuntz v. State Highway Commissioner*, 405 N.W.2d 285, 285–286, 288, 290 (N.D.1987). The underlying premise of our holdings in *Evans* and *Kuntz* is that a driver has no

obligation to submit to chemical testing until the officer makes a valid request for testing in compliance with the relevant statutory provisions. Because there was no valid request under Chapter 39–20 until the officer afforded the driver his statutorily mandated right to consult an attorney, the driver's subsequent failure to submit to testing was not a refusal which would support revocation of his license. Consistent with our conclusions in *Evans* and *Kuntz*, we hold that where an officer does not inform a driver that he or she "is or will be charged with" driving under the influence or actual physical control as required by Section 39–20–01, there has been no legally effective request for testing and the driver's failure to submit to testing is not a "refusal" for purposes of Chapter 39–20, N.D.C.C.[1]

The question left for resolution is whether the evidence would support a finding that Throlson was advised, before the test was requested, that he was or would be charged with DUI. The hearing officer made a general finding that Throlson had refused testing, but did not address the more specific question of whether Throlson was informed of his arrest for DUI before refusing. Because we conclude that there is no evidence in the record which would support a finding that Throlson was so advised, a remand for such a finding would be futile. *Cf. Evans v. Backes, supra*, 437 N.W.2d at 851 (remanding for finding on whether driver was afforded a reasonable

opportunity to consult an attorney before deciding whether to submit to a blood test).

The only evidence presented relating to a DUI arrest is Dingeman's testimony that he told the jailer to book Throlson for DUI. Nothing in the record suggests that this information was directly conveyed to Throlson, or that Throlson overheard Dingeman's statement to the jailer or was even in the same room at the time it was made. On this record, there is no evidence to support a finding that Throlson was informed that he was or would be placed under arrest for DUI. Accordingly, in light of our holding that failure to submit to testing is not a "refusal" if the driver has not been advised he or she is or will be charged with DUI, the agency finding of a refusal is not supported by a preponderance of the evidence and the Department has failed to meet its burden of proof. *See Kobilansky v. Liffrig*, 358 N.W.2d 781, 790 (N.D.1984).

*Asbridge v. North Dakota State Highway Commissioner*, 291 N.W.2d 739 (N.D. 1980), relied upon by the Director, is inapposite. In *Asbridge*, the arresting officer testified that he advised the driver that he was under arrest for "physical control—the act of physical control." *Asbridge, supra*, 291 N.W.2d at 746. Asbridge asserted that the arrest was unlawful because the officer did not advise him in the exact language of Section 39–20–01, N.D.C.C. We concluded that the surrounding circumstances could

---

1. *Hammeren v. North Dakota State Highway Commissioner*, 315 N.W.2d 679 (N.D.1982), is distinguishable. Hammeren had been arrested for DUI and given *Miranda* warnings, but was not informed of the consequences of a refusal to submit to a Breathalyzer test. Hammeren asserted that the failure to so inform him justified his refusal to take the test. This court stressed that *State v. Fields*, 294 N.W.2d 404 (N.D.1980), upon which Hammeren relied, had only given a *suggested* procedure to prevent confusion when it recommended that the driver be advised of the consequences of refusal. *See Hammeren, supra*, 315 N.W.2d at 681–682. Accordingly, the court held that the officer's failure to follow this suggested procedure did not justify Hammeren's refusal to submit to testing.

The obvious distinction between this case and *Hammeren* is that the officer in Hammeren merely failed to follow a procedure suggested in dicta in a prior court opinion, whereas the offi-

cer here failed to follow a statutorily mandated procedure for obtaining chemical tests. In this regard, we note that at the time *Hammeren* was decided, there was no statutory requirement that the officer advise the driver of the consequences of a refusal to submit to testing. The 1983 Legislature amended Section 39–20–01, N.D.C.C., to include this requirement. 1983 N.D.Sess.Laws Ch. 415, § 24.

Another stated basis for the court's decision in *Hammeren* which distinguishes it from this case is the specific provision in Section 39–20–05(3), N.D.C.C., that failure to inform the driver that his license may be revoked for failure to submit to testing may not be raised as an issue at the administrative hearing. No similar specific provision restricts consideration of the officer's failure to inform the driver that he or she is or will be charged with DUI, as required by Section 39–20–01, N.D.C.C.

be considered in determining whether the advisory given was sufficient to place the driver upon notice that he had been arrested for DUI or actual physical control. We held that the officer's statements to Asbridge, viewed in light of the surrounding circumstances, could be found sufficient to comply with Section 39-20-01, N.D.C.C.

*Asbridge* does not stand for the proposition that the circumstances of the arrest can compensate for the officer's total failure to provide the statutorily mandated notice to the driver. While the fact that the officer reads the implied consent advisory to the driver and requests a chemical test may be a factor in determining the sufficiency of the language used to inform the driver of the reason for the arrest, it does not negate the requirement that some notice of the cause of the arrest be given to the driver. The result suggested by the Director in this case would effectively render the statutory requirement meaningless, because the circumstances relied upon by the Director to demonstrate that Throlson was aware of the reason for his arrest would be present in every case.

We also note an additional significant factual distinction between this case and *Asbridge.* Asbridge was detained and arrested only for the alcohol-related offense. Throlson, however, was first arrested and transported to the jail for driving under suspension. More importantly, he was specifically told that that was the reason he was being taken to jail. Although *Asbridge* and cases cited therein [2] may suggest that the circumstances of an arrest may provide a defendant with sufficient notice of the cause of arrest, that reasoning is significantly altered when the defendant is charged with multiple offenses.

We conclude that there is no evidence that Throlson was advised that he was or would be charged with DUI, and, accordingly, his failure to submit to a chemical test was not a "refusal" under Chapter 39-20. The judgment of the district court is affirmed.

ERICKSTAD, C.J., and MESCHKE, GIERKE and VANDE WALLE, JJ., concur.

VANDE WALLE, Justice, concurring specially.

It is as possible to construe Dingeman's testimony that he told the jailer to book Throlson for DUS and DUI to mean that the directions were given in Throlson's hearing or presence as it is to construe it to mean the directions were given out of his hearing or presence. If the statements were made in Throlson's hearing or presence, it would, in my estimation, be sufficient to inform Throlson that he was under arrest for driving under the influence. However, the statute, section 39-20-01, NDCC, provides that before the test is to be administered the law enforcement officer must place the person under arrest and inform the person "that the person is or will be charged with the offense of driving or being in actual physical control of a vehicle ... while under the influence...." As a result, I believe that where there is a question inherent in the testimony as to whether the statutory requirement was met there must be a specific finding as to that fact based on the hearing officer's understanding of the evidence. Here there was no such specific finding and I concur in the result reached by the majority.

---

**2.** *See State v. Arntz,* 286 N.W.2d 478 (N.D.1979); *State v. Iverson,* 187 N.W.2d 1 (N.D.), *cert. de-*nied, 404 U.S. 956, 92 S.Ct. 322, 30 L.Ed.2d 273 (1971).