Filed 10/23/12 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2012 ND 223

Clinton John Gardner, Plaintiff and Appellant

v.

North Dakota Department

of Transportation, Defendant and Appellee

No. 20120230

Appeal from the District Court of Stark County, Southwest Judicial District, the Honorable William A. Herauf, Judge.

AFFIRMED.

Opinion of the Court by VandeWalle, Chief Justice.

Danny L. Herbel, The Regency Business Center, 3333 E. Broadway Ave., Ste. 1205, Bismarck, ND 58501, for plaintiff and appellant.

Douglas B. Anderson, Assistant Attorney General, Office of Attorney General, 500 N. 9th St., Bismarck, ND 58501-4509, for defendant and appellee.

Gardner v. N.D. Dep’t of Transportation

No. 20120230

VandeWalle, Chief Justice.

[¶1] 
Clinton John Gardner appealed from a district court judgment affirming a North Dakota Department of Transportation hearing officer’s decision suspending his driving privileges for one year. We affirm.

I.

[¶2] On January 21, 2012, Stark County Deputy Sheriff Tim Josephson responded to a report that a vehicle had lost a wheel, driven through a farmyard, and possibly driven through a fence. Highway Patrol Officer Troy Davis also responded to assist Deputy Josephson. With the assistance of the reporting party, Deputy Josephson found a van in a field. Deputy Josephson ordered the driver and passenger to exit the vehicle. When the driver exited the vehicle, he was ordered to put his hands up and walk backwards toward the officer. He walked in a “zigzag manner, appearing unable to walk in a straight line.” The driver was handcuffed and put in the back of a Highway Patrol car. The driver refused to identify himself, repeatedly telling the officer to “figure it out by doing your job.” The deputy learned the driver’s name, Clinton Gardner, from the passenger and from the registration information for the van.

[¶3] Deputy Josephson smelled alcohol on Gardner’s breath, and asked Gardner if he would submit to screening tests. Gardner said, “good luck.” He asked Gardner if he would submit to the horizontal gaze nystagmus test (“HGN test”). Deputy Josephson gave Gardner the implied consent advisory several times, informing Gardner of the consequences of refusing the HGN test even though there are no consequences associated with refusing the HGN test. Gardner continued to tell Deputy Josephson “good luck.” Josephson then inspected the van, finding one of the tires was shredded and a case of beer was in the back of the van with several missing. He placed Gardner under arrest for actual physical control of a vehicle while under the influence. No evidence was presented indicating Gardner was given the implied consent advisory after his arrest.

[¶4] Gardner was moved to Deputy Josephson’s vehicle, and was asked repeatedly whether he would submit to a blood test. Gardner repeatedly responded that he “had two words for Josephson.” Deputy Josephson transported Gardner to the jail. On the way, he again requested a blood test from Gardner. This time, Gardner said “yeah, I’ll give you a blood test.” Gardner then began to threaten the officer and the general public in an obscene tirade. Deputy Josephson testified these threats continued all the way to the jail, a 15-20 minute drive. When they arrived at the jail, Gardner refused to exit Deputy Josephson’s car. Deputy Josephson determined Gardner had effectively refused the blood test. Once Gardner was placed in a cell, Deputy Josephson attempted to explain the report and notice of the possible suspension of Gardner’s driver’s license, but Gardner interrupted and refused to listen.

[¶5] Gardner requested an administrative hearing on the suspension of his driver’s license. The hearing was held on February 16, 2012. Gardner argued because he wasn’t given the implied consent advisory for the request for chemical testing, his conduct could not be deemed a refusal. He also argued he consented to the test when he said “yeah, I’ll take the test,” but was never given the opportunity to take the test. The administrative officer found Josephson had reasonable grounds to believe Gardner was in actual physical control of a vehicle, Gardner was arrested, and Gardner had effectively refused the blood test by his conduct despite stating he would take the test. The hearing officer suspended Gardner’s driver’s license for one year.

II.

[¶6] We review Department of Transportation decisions to suspend a driver’s license under the Administrative Agencies Practices Act, N.D.C.C. ch. 28-32, and must affirm the order unless:

1. The order is not in accordance with the law.

2. The order is in violation of the constitutional rights of the appellant.

3. The provisions of this chapter have not been complied with in the proceedings before the agency.

4. The rules or procedure of the agency have not afforded the appellant a fair hearing.

5. The findings of fact made by the agency are not supported by a preponderance of the evidence.

6. The conclusions of law and order of the agency are not supported by its findings of fact.

7. The findings of fact made by the agency do not sufficiently address the evidence presented to the agency by the appellant.

8. The conclusions of law and order of the agency do not sufficiently explain the agency’s rationale for not adopting any contrary recommendations by a hearing officer or an administrative law judge.

N.D.C.C. § 28-32-46. “This Court reviews the Department’s findings and decisions, but the district court’s analysis is entitled to respect if it is sound.” 
Koenig v. N.D. Dep’t of Transp.
, 2012 ND 18, ¶ 4, 810 N.W.2d 333.

We do not make independent findings of fact or substitute our judgment for that of the agency when reviewing an administrative agency’s factual findings. We determine only whether a reasoning mind reasonably could have determined the factual conclusions reached were proved by the weight of the evidence from the entire record. If the hearing officer’s findings of fact are supported by a preponderance of the evidence, the conclusions of law are sustained by the findings of fact, and the decision is supported by the conclusions of law, we will not disturb the decision. [W]e . . . review questions of law de novo.

Lange v. N.D. Dep’t of Transp.
, 2010 ND 201, ¶ 5, 790 N.W.2d 28 (quoting 
Abernathey v. N.D. Dep’t of Transp.
, 2009 ND 122, ¶ 7, 768 N.W.2d 485).

[¶7] Gardner argues because the officer did not again inform him of the consequences of refusal of the blood test after arrest as required by N.D.C.C. § 39-20-

01, his failure to submit to the blood test was not a refusal. Gardner also argues he consented to the blood draw, but was never given one. The Department of Transportation argues whether Gardner was advised of the consequences of refusal was outside the scope of issues to be determined at the administrative hearing.

[¶8] Section 39-20-01 of the North Dakota Century Code requires a driver be placed under arrest and be informed that he or she will be charged with the offense of driving or being in actual physical control of a vehicle while under the influence of alcohol or drugs before a chemical test to determine a driver’s blood alcohol content can be administered. If the driver refuses the testing, no testing may be given, but the driver’s license could be revoked for up to four years for refusing. N.D.C.C. § 39-20-04(1). “It is axiomatic that before there can be a ‘refusal’ to submit to testing under Section 39-20-01, there must be a valid request for testing under the statute.” 
Throlson v. Backes
, 466 N.W.2d 124, 126 (N.D. 1991).

[¶9] When requesting a chemical test of blood, urine, breath or saliva to determine blood alcohol content, law enforcement is required to “inform the person charged that refusal of the person to submit to the test . . . will result in a revocation for up to four years of the person’s driving privileges.” N.D.C.C. § 39-20-01. Gardner argues if this requirement is not met, there is no valid request for testing and there can be no refusal. However, N.D.C.C. § 39-20-05(3) limits the scope of an administrative hearing for refusal to three issues:

whether a law enforcement officer had reasonable grounds to believe the person had been driving or was in actual physical control of a vehicle in violation of section 39-08-01 or equivalent ordinance . . . whether the person was placed under arrest; and whether that person refused to submit to the test or tests.

Significantly, section 39-20-05(3) specifically states “[w]hether the person was informed that the privilege to drive would be revoked or denied for refusal to submit to the test or tests is not an issue.” The purpose for this provision is to “[prohibit] a driver from raising the issue of ignorance of the law.” 
Olson v. N.D. Dep’t of Transp.
, 523 N.W.2d 258, 261 (N.D. 1994). In 
Agnew v. Hjelle
, this Court held N.D.C.C. § 39-20-05(3) “specifically prohibits an issue being made of whether the person was informed that his privilege to drive would be revoked or denied if he refused to submit to such a test or tests.” 216 N.W.2d 291, 296 (N.D. 1974). Although the provision in N.D.C.C. § 39-20-05(3) limiting the scope of the hearing was enacted in 1959, long before the legislature required an implied consent advisory in 1983, the provision was not removed when the legislature enacted the advisory requirement. 
See
 1959 N.D. Sess. Laws ch. 286 § 5 (codified at N.D.C.C. § 39-20-05); 1983 N.D. Sess. Laws ch. 415 §§ 24, 27 (codified at N.D.C.C. § 39-20-01, 05(3)).

[¶10] However, in support of his position, Gardner points to 
Olson
, which stated “[i]f the statutory directives are not complied with, then a child’s subsequent failure to take a chemical test is not a refusal for purposes of section 39-20-01.” 
Olson
, 523 N.W.2d at 261. In 
Olson
, a seventeen-year-old was arrested for driving under the influence. 
Id.
 at 259. The police called the driver’s mother and informed her of the charges against him, but failed to read the implied consent advisory to her as required by N.D.C.C. § 39-20-01. 
Id.
 Gardner’s reliance on 
Olson
 is misplaced. This Court specifically stated in 
Olson
 that the issue of whether a minor consulted with his or her parent before consenting to the test is a “different issue than the one section 39-20-

05(3) precludes from consideration at an administrative hearing.” 
Id.
 at 261. The “statutory directive” referred to in 
Olson
 was the requirement that law enforcement explain the implied consent for chemical testing to parents of a minor arrested for driving under the influence, not the requirement that law enforcement inform the driver of the consequences of refusal. 
Id.
 at 261. Therefore, section 39-20-05(3) did not exclude the officer’s failure to read the informed consent advisory to the minor’s mother. 
Id.
  In this case, Gardner argues he was not informed of the consequences of refusal, which is exactly the issue section 39-20-05(3) precludes from consideration.

[¶11] Gardner also mistakenly relies on 
Kuntz v. State Highway Comm’r
, 405 N.W.2d 285 (N.D. 1987). In 
Kuntz
, the driver claimed he was denied his right to reasonably consult with an attorney before deciding to take the test as required by N.D.C.C. § 29-05-20, not whether he was read the implied consent advisory. 
Id.
 at 287. 
Kuntz
, like 
Olson
, considered a different issue than the issue precluded in section 39-20-05(3). 

[¶12] Gardner argues that the limitation in N.D.C.C. § 39-20-05(3) applies only to the so-called “confusion doctrine,” the argument that the driver was confused by the conflicting rights and obligations of the implied consent advisory and Miranda warnings. 
See
 
Miranda v. Arizona
, 384 U.S. 436 (1966); 
Rust v. Department of Motor Vehicles
, 267 Cal.App.2d 545, 547 (1968). Therefore, Gardner argues Miranda warnings must have been given in order for section 39-20-05(3) to apply. The statute on its face is not limited to such a situation. N.D.C.C. § 39-20-05(3). It is an unqualified exclusion of the issue that the driver was not informed of the consequences of refusal. 
Id.

[¶13] Finally, Gardner argues the Department of Transportation should be precluded from arguing N.D.C.C. § 39-20-05(3) applies because the hearing officer did not specifically rule that it applied. The decision of the hearing officer is conspicuously silent on whether the officer complied with the implied consent advisory requirement of section 39-20-01. The hearing officer, beyond the bare statement of facts, only ruled on the three issues within the scope of the hearing: whether Deputy Josephson had reasonable cause to believe Gardner was in actual physical control of a vehicle while under the influence, whether Gardner was arrested, and whether Gardner refused testing. Adopting Gardner’s reasoning would place an affirmative duty on the hearing officer in a refusal case to rule that he or she is not considering an argument that is statutorily barred from consideration. We refuse to do so. Rather, we conclude the hearing officer did not consider the argument because the statute states it is not a matter to be considered.

[¶14] Section 39-20-05(3) by its terms specifically excludes from consideration at the administrative hearing whether or not the driver was informed of the consequences of refusal. Nothing in the statutes or case law mitigates this exclusion, and the hearing officer properly did not rule on whether Gardner was informed of the consequences of refusal. The issue was properly excluded from consideration at the administrative hearing.

III.

[¶15] Gardner argues he did not actually refuse the chemical testing. Whether a driver has refused to submit to a chemical test is a question of fact. 
Hammeren v. N.D. State Highway Comm’r
, 315 N.W.2d 679, 682-83 (N.D. 1982). “[F]ailure to submit to a test, whether by stubborn silence or by a negative answer, can be a refusal.” 
Mayo v. Moore
, 527 N.W.2d 257, 260 (N.D. 1995). “A physical failure to cooperate may also amount to a refusal.” 
Id.
 citing 
Jorgenson v. Dep’t of Transp.
, 498 N.W.2d 167 (N.D. 1993); 
Geiger v. Hjelle
, 396 N.W.2d 302 (N.D. 1986). 

[¶16] The hearing officer found Gardner refused chemical testing by failing to cooperate. When Gardner was asked if he would consent to a blood test, at first he was evasive, repeatedly responding “I’ve got two words for you.” Before reaching the jail, Gardner said “yeah, I’ll give you a blood test.” After agreeing to the test, Gardner began making threats toward the officer and the general public. When they arrived at the jail, Gardner refused to cooperate with officers, and refused to get out of the car. The hearing officer determined this amounted to a refusal.

[¶17] We will not “make independent findings of fact or substitute our judgment for that of the agency when reviewing an administrative agency’s factual findings.” 
Lange v. N.D. Dep’t of Transp.
, 2010 ND 201, ¶ 5, 790 N.W.2d 28 (quoting 
Abernathey
, 2009 ND 122, ¶ 7, 768 N.W.2d 485). When reviewing factual findings, we only consider “whether a reasoning mind reasonably could have determined the factual conclusions reached were proved by the weight of the evidence from the entire record.” 
Id.
 A reasoning mind could reasonably conclude that despite Gardner’s verbal acquiescence to the chemical testing, the context in which the words were stated, his subsequent threats, and his refusal to cooperate with officers belied any intent to take the test and amounted to a refusal to do so. The hearing officer’s decision is supported by the weight of the evidence in the record, and is entitled to our deference.

IV.

[¶18] We affirm the district court’s judgment affirming the administrative suspension of Gardner’s driving privileges.

[¶19] Gerald W. VandeWalle, C.J.

Carol Ronning Kapsner

Dale V. Sandstrom

Daniel J. Crothers

Mary Muehlen Maring