VandeWalle, Chief Justice.
 

 [¶ 1] Ryan Michael Korb appealed from a judgment affirming a Department of Transportation decision suspending his driving privileges for ninety-one days. Korb argues (1) the arresting officer improperly included additional language before he read the statutorily required implied consent advisory, and (2) the record evidence was insufficient to establish that this blood test sample had been properly obtained. We conclude the officer did not act improperly by prefacing the implied consent advisory with accurate information. We also conclude the record evidence was sufficient to establish that the blood test sample had been properly obtained. We affirm.
 

 I
 

 [¶ 2] In August 2017, an officer initiated a traffic stop on a vehicle that appeared to be speeding. When the officer made contact with the driver, Korb, he observed that Korb had red, bloodshot, watery eyes. Korb admitted that he "felt a little buzzed." After Korb failed several field sobriety tests, the officer read the implied consent advisory and asked Korb to take a preliminary breath test. Korb consented. The preliminary breath test result was above the presumptive limit. The officer
 
 *52
 
 then placed Korb under arrest for driving under the influence, read him his
 
 Miranda
 
 rights, and repeated the implied consent advisory. The advisory the officer read both times stated:
 

 As a condition of operating a motor vehicle on a highway, or on a public or private area, to which the public has right of access to, you have consented to taking a test to determine whether you are under the influence of alcohol or drugs.
 

 I must inform you that North Dakota law requires you to submit to a chemical test to determine whether you are under the influence of alcohol. Refusal to take the test as directed by a law enforcement officer may result in a revocation of your driver's license for a minimum of 180 days and potentially up to three years.
 

 [¶ 3] After the second reading of the implied consent advisory, Korb consented to a chemical blood test. The blood test result showed blood alcohol levels above the legal limit.
 

 [¶ 4] At the administrative hearing, Korb objected to admission of the blood test and related evidence under N.D.C.C. § 39-20-01(3)(b). Korb argued the record was insufficient to show the blood sample was properly obtained and fairly administered. Korb also argued there was insufficient evidence to establish compliance with the Form 104 checklist.
 

 [¶ 5] During the hearing, the officer testified that the implied consent advisory given to Korb was read from a card prepared by the Burleigh County States Attorney. While discussing the blood draw, the hearing officer admitted the completed top portion of Form 104 into evidence. However, the bottom portion of the form, which contains a checklist, was not offered in evidence. Instead, the hearing officer questioned the officer on his compliance with the form's checklist.
 

 [¶ 6] The hearing officer denied Korb's motion to exclude evidence of the blood test and concluded that both the implied consent advisory and blood test were properly administered. The Department suspended Korb's driving privileges for ninety-one days. Korb requested judicial review of the decision. The district court affirmed the hearing officer's decision that the implied consent advisory was lawful and that the officer's testimony was "sufficient to overcome the failure to introduce the Form 104."
 

 II
 

 [¶ 7] The Administrative Agencies Practice Act, N.D.C.C. ch. 28-32, governs our review of an administrative decision suspending or revoking a driver's license.
 
 Crawford v. Dir., N.D. Dep't of Transp.
 
 ,
 
 2017 ND 103
 
 , ¶ 3,
 
 893 N.W.2d 770
 
 . Section 28-32-46, N.D.C.C., requires a district court to affirm an agency order unless the order is not in accordance with the law, the order violates the constitutional rights of the appellant, the provisions of N.D.C.C. ch. 28-32 have not been complied with in the proceedings before the agency, the agency's rules or procedure have not afforded the appellant a fair hearing, the agency's findings of fact are not supported by a preponderance of the evidence, the agency's conclusions of law and order are not supported by its findings of fact, or the agency's findings of fact do not sufficiently address the evidence presented by the appellant. Under N.D.C.C. § 28-32-49, we review an administrative appeal from a district court judgment in the same manner as provided under N.D.C.C. § 28-32-46.
 

 [¶ 8] In reviewing an agency's findings of fact, we do not make independent findings of fact or substitute our judgment for that of the agency; rather,
 
 *53
 
 we determine only whether a reasoning mind reasonably could have concluded the agency's findings were supported by the weight of the evidence from the entire record.
 
 Crawford
 
 ,
 
 2017 ND 103
 
 , ¶ 4,
 
 893 N.W.2d 770
 
 (
 
 citing
 

 Power Fuels, Inc. v. Elkin,
 

 283 N.W.2d 214
 
 , 220 (N.D. 1979) ). We defer to the agency's opportunity to judge witnesses' credibility.
 
 Crawford
 
 , at ¶ 4. Once the facts are established, their significance presents a question of law, which we review de novo.
 
 Id
 
 .
 

 III
 

 [¶ 9] Korb argues the officer's statement that "[a]s a condition of operating a motor vehicle on a highway, or on a public or private area, to which the public has right of access to, you have consented to taking a test to determine whether you are under the influence of alcohol or drugs," was inaccurate, misleading, and did not comply with the "specific warning" required by statute. Korb suggests that under
 
 State v. O'Connor
 
 ,
 
 2016 ND 72
 
 ,
 
 877 N.W.2d 312
 
 , any additional language to the implied consent advisory makes subsequent blood test evidence inadmissible.
 
 O'Connor
 
 is not that far reaching.
 
 O'Connor
 
 requires a specific warning from N.D.C.C. § 39-20-01(3)(a) be used in implied consent advisories.
 
 2016 ND 72
 
 , ¶ 13,
 
 877 N.W.2d 312
 
 . It does not require that the only words an officer may say are those written in N.D.C.C. § 39-20-01(3)(a).
 

 [¶ 10] "Words of a statute are given their plain, ordinary, and commonly understood meaning unless a contrary intention plainly appears."
 
 State v. O'Connor
 
 ,
 
 2016 ND 72
 
 , ¶ 8,
 
 877 N.W.2d 312
 
 (internal citations omitted). Section 39-20-01(3), N.D.C.C., requires "a specific warning be provided to an arrested defendant before the results of a chemical test can be admitted in a[n] ... administrative proceeding."
 
 O'Connor,
 
 at ¶ 13. Neither the plain language of N.D.C.C. § 39-20-01(3) nor its legislative history indicate an intent by the legislature to restrict an officer's speech to only the specific words written in the statute. Instead, the statute provides only the mandatory language that must be included in the advisory.
 
 See
 
 N.D.C.C. § 39-20-01(3)(b) ;
 
 State v. Bohe
 
 ,
 
 2018 ND 216
 
 , ¶ 16,
 
 917 N.W.2d 497
 
 .
 

 [¶ 11] Nothing in the record suggests that the language prefacing the implied consent advisory, derived from N.D.C.C. § 39-20-01(1), was an inaccurate statement of law. Nor does the record suggest the language rendered Korb's consent involuntary. "[A]n individual's consent is not coerced simply because an administrative penalty has been attached to refusing the test or that law enforcement recites that law to the driver."
 
 McCoy v. N.D. Dep't of Transp.
 
 ,
 
 2014 ND 119
 
 , ¶ 24,
 
 848 N.W.2d 659
 
 . "An accurate advisory does not by itself compel the conclusion that consent was not voluntary."
 
 State v. Fleckenstein
 
 ,
 
 2018 ND 52
 
 , ¶ 7,
 
 907 N.W.2d 365
 
 ,
 
 see also
 

 Krueger v. N.D. Dep't of Transp.
 
 ,
 
 2018 ND 108
 
 , ¶ 19,
 
 910 N.W.2d 850
 
 . The voluntariness of consent is determined using "a totality of the circumstances approach."
 
 Fleckenstein,
 
 at ¶ 9. Accurate information given in addition to a complete implied consent advisory does not indicate that the advisory did not comply with statutory requirements.
 
 See
 

 McHugh v. State
 
 ,
 
 285 Ga.App. 131
 
 ,
 
 645 S.E.2d 619
 
 , 621 (2007) ;
 
 see also
 

 Diaz v. Bernini
 
 ,
 
 244 Ariz. 417
 
 ,
 
 419 P.3d 950
 
 , 954-55 (Ariz. Ct. App. 2018) ("Although he prefaced the admonition ... what followed accurately described the contents of the statute.")
 

 [¶ 12] Additional information must not materially mislead or coerce the driver. If the additional language provided by the officer is accurate, its presence does not alter the sufficiency of a complete,
 
 *54
 
 accurate implied consent advisory under N.D.C.C. § 39-20-01(3). The officer did not act improperly by including accurate statutory information before the implied consent advisory. The additional language read to Korb did not render his consent involuntary and evidence of the blood test was thus admissible in the administrative proceeding.
 

 IV
 

 [¶ 13] Korb argues the results of the blood test are inadmissible because the officer's testimony did not show scrupulous compliance with Form 104. Form 104 requires verification of five steps. Korb argues the officer did not comply with steps two and three:
 

 2. Affixed Completed Specimen Label/Seal Over the Top and Down the Sides of the Blood Tube.
 

 3. Placed the Blood Tube Inside the Blood Tube Protector and Then Placed it in the Plastic Bag Provided. (
 
 Do Not Remove Liquid Absorbing Sheet.
 
 )
 

 [¶ 14] A completed Form 104 checklist may be introduced as evidence at an administrative hearing to prove fair administration, chain of custody and compliance with the approved testing method.
 
 Filkowski v. Dir., N.D. Dep't. of Transp.
 
 ,
 
 2015 ND 104
 
 , ¶ 10,
 
 862 N.W.2d 785
 
 ;
 
 see
 
 N.D.C.C. § 39-20-07(7). When the bottom of Form 104 is not sent to the Department or presented as evidence at the administrative hearing, "[t]estimony from the participants, including the specimen submitter, can be used to show they scrupulously complied with the methods approved by the state crime laboratory director."
 
 Leno v. Dir., N.D. Dep't. of Transp.
 
 ,
 
 2015 ND 255
 
 , ¶ 9,
 
 870 N.W.2d 455
 
 . While scrupulous compliance with Form 104 can be used to establish fair administration of a blood test, " 'scrupulous' compliance does not mean 'hypertechnical' compliance."
 
 State v. Keller
 
 ,
 
 2013 ND 122
 
 , ¶ 7,
 
 833 N.W.2d 486
 
 . An officer need not use the exact terminology set forth on the bottom of Form 104 for the testimony to be sufficient for the hearing officer to reasonably find the officer scrupulously complied with the requirements in the specimen submitter's checklist.
 
 Leno
 
 , at ¶ 10. "[W]hen the deviation from the approved method could not have affected the reliability or accuracy of the test results, the deviation does not render the test results inadmissible."
 
 Keller
 
 , at ¶ 8.
 

 [¶ 15] Here, the officer testified about his compliance with the Form 104 checklist:
 

 Ms. Huber: What happened to the sample of blood after it was drawn?
 

 Sgt. Braun: I took custody of the blood draw, or of the vial, inverted it several times also, sealed the ... the shipping container with his blood in there.
 

 Ms. Huber: Can you walk me through how you sealed that container?
 

 Sgt. Braun: It was an integrity seal that you have to seal over the blood draw ... over the blood vial, which I took from and sealed over the top of the blood vial, put it in the shipping container. There's another integrity seal that you put over top of the shipping container where I have to initial and date on there.
 

 Ms. Huber: So you received the vial of blood and ... and you indicate where you placed a seal over the vial of blood?
 

 Sgt. Braun: Yes, I did.
 

 Ms. Huber: What happened with the vial of blood after you placed the seal over it?
 

 Sgt. Braun: I then placed it in to the shipping container, the cardboard shipping container that ... where the blood vial goes.
 

 *55
 
 Ms. Huber: Is there a particular method in which you package that?
 

 Sgt. Braun: Well, you have to package it in the ... there's a plastic baggie that you put it in and there's some bubble wrapping that you have to put that in. And then you put it in the container and then seal it up. And then it gets sent to the state lab.
 

 [¶ 16] In
 
 State v. Jordheim
 
 ,
 
 508 N.W.2d 878
 
 , 880-81 (N.D. 1993), scrupulous compliance was established when the officer testified, "I received the container. I sealed it. I initialed the seal and everything. I filled out the rest of the proper paper work. I put it back in the canister. I sealed the canister." In
 
 Keller
 
 , compliance was established where the officer testified that he opened a sealed kit box and examined the contents; observed the nurse draw Keller's blood and invert the tube, which he sealed and initialed; and packaged and sealed the test kit and Form 104 and labeled the package.
 
 2013 ND 122
 
 , ¶ 12,
 
 833 N.W.2d 486
 
 . In
 
 Filkowski
 
 , the officer testified to sealing the tube by "starting at the top and putting it down the side" and that she "put the tube in the blood tube protector with the absorbing sheet, placed the protector into the plastic bag provided in the kit, placed the whole unit with the top portion of Form 104 in the kit box and sealed the box with the kit seal."
 
 2015 ND 104
 
 , ¶ 18,
 
 862 N.W.2d 785
 
 . This testimony established compliance with the approved method.
 
 Id
 
 .
 

 [¶ 17] In
 
 Schlosser v. N.D. Dep't. of Transp.
 
 ,
 
 2009 ND 173
 
 , ¶ 13,
 
 775 N.W.2d 695
 
 , the Court concluded the officer's testimony was not sufficient to establish compliance with the Form 104 requirements. In
 
 Schlosser
 
 , the officer stated only "Yes, I did" when asked if he "had ascertained that the steps listed on Form 104 were completed."
 
 Schlosser
 
 ,
 
 2009 ND 173
 
 , ¶ 13,
 
 775 N.W.2d 695
 
 . The Court held that such "conclusory and perfunctory testimony" did not show scrupulous compliance with the approved method.
 
 Id
 
 .
 

 [¶ 18] In this case, the officer testified to sealing the blood tube with an integrity seal and indicating where he placed the seal. The officer also testified that he packaged the blood vial as described on Form 104. Other evidence of compliance with Form 104's requirements included the "Submission for Blood," completed by the State Crime Laboratory, which showed a properly labeled blood tube was received in a sealed container. The officer's testimony established he performed Form 104's required steps and showed scrupulous compliance with the approved method.
 

 [¶ 19] While the officer's testimony in this case was adequate to show compliance, the form itself states to "Tear Along the Perforation and Retain Bottom Portion for Your Records." A properly completed Form 104 checklist entered into evidence is prima facie evidence of "[f]air administration, chain of custody, and compliance."
 
 Filkowski v. Dir., N.D. Dep't. of Transp.
 
 ,
 
 2015 ND 104
 
 , ¶ 13,
 
 862 N.W.2d 785
 
 ;
 
 see
 
 N.D.C.C. § 39-20-07(7). Use of this legislatively authorized "evidentiary shortcut" would avoid unnecessary litigation.
 
 See
 

 State v. Jordheim
 
 ,
 
 508 N.W.2d 878
 
 , 883 (N.D. 1993).
 

 V
 

 [¶ 20] We affirm the judgment.
 

 [¶ 21] Gerald W. VandeWalle, C.J.
 

 Daniel J. Crothers
 

 Jerod E. Tufte
 

 Lisa Fair McEvers
 

 -I concur in result.
 

 Jon J. Jensen