# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

2019 ND 231

Ewer N. Alvarado,                                                                                            Appellee

v.

North Dakota Department of Transportation,                                          Appellant

No. 20190032

Appeal from the District Court of Dunn County, Southwest Judicial District, the Honorable James D. Gion, Judge.

AFFIRMED.

Opinion of the Court by Jensen, Justice.

Chad R. McCabe, Bismarck, ND for appellee.

Douglas B. Anderson, Assistant Attorney General, Bismarck, ND, for appellant.

**Jensen, Justice.**

[¶1]    The North Dakota Department of Transportation (NDDOT) appeals from a district court judgment reversing an administrative hearing officer's decision revoking Alvarado's driving privileges for a period of 180 days.  NDDOT argues that the district court erred in finding that a partial reading of the implied consent advisory rendered Alvarado's refusal to submit to a chemical test invalid.  Our statutes require an operator to refuse a request "to submit to a test under section 39-20-01." A request for testing preceded by an incomplete or inaccurate advisory is not a request "to submit to a test under section 39-20-01." We affirm the district court, reverse the decision of the administrative hearing officer, and reinstate Alvarado's driving privileges.

[¶2]    The facts of this case are not in dispute.  Alvarado was stopped for a traffic violation.  Alvarado was subsequently arrested for driving under the influence. Following his arrest, Alvarado was read a partial implied consent advisory.  The partial advisory failed to inform him that refusing to take a chemical test could be treated as a crime.  Alvarado refused to submit to a chemical test.  At issue is whether Alvarado's refusal can be determined to have been a refusal to submit to testing under N.D.C.C. § 39-20-01 when he was not provided with the complete implied consent advisory as provided by N.D.C.C. § 39-20-01.

[¶3]    Alvarado argues that a refusal to submit to chemical testing requires a request for testing under N.D.C.C. § 39-20-01, and N.D.C.C. § 39-20-01 requires a complete implied consent advisory precede a request for testing.  Alvarado relies on our prior opinion in *Throlson v. Backes* to support his assertion that a partial implied consent warning is an invalid request for testing and prevents a determination that an operator has refused a request for testing.  466 N.W.2d 124, 126 (N.D. 1991).  *See also State v. Bauer*, 2015 ND 132, ¶ 7, 863 N.W.2d 534; *Gardner v. N.D. Dep't. of Transp.*,

2012 ND 223, ¶ 8, 822 N.W.2d 55.  In *Throlson*, we observed "[i]t is axiomatic that before there can be a 'refusal' to submit to testing under Section 39-20-01, there must be a valid request for testing under the statute."  *Throlson*, 466 N.W.2d at 126.  We have further noted the following in the context of determining whether an operator has refused to submit to a chemical test:

> An arrest by itself is not enough to trigger the required testing under NDCC 39-20-01.  The arresting officer must also inform the driver that he is or will be charged with driving under the influence or being in actual physical control.  *See Throlson v. Backes*, 466 N.W.2d 124, 127 (N.D. 1991) (holding failure to inform driver about alcohol charge upon arrest made test request under NDCC 39-20-01 ineffective).  Here, Holte never informed Scott that he was or would be charged with an alcohol offense, and the officer did not direct a test under NDCC 39-20-01.

*Scott v. N.D. DOT*, 557 N.W.2d 385, 388 (N.D. 1996).

[¶4]   The penalty of revocation of an operator's driving privileges for refusing to submit to a chemical test is imposed by N.D.C.C. § 39-20-04.  It provides that the penalty of revocation is imposed "[i]f a person refuses to submit to testing under section 39-20-01" and revocation is imposed when it has been determined "the person had refused to submit to the test or tests under section 39-20-01."  The unambiguous language of  N.D.C.C. § 39-20-04 requires a request for a test be made under N.D.C.C. § 39-20-01.  Additionally, the statutory guidance for conducting the administrative hearing specifically provides "[t]he scope of a hearing for refusing to submit to a test under section 39-20-01."  N.D.C.C. § 39-20-05.

[¶5]   Our prior decisions in *Throlson*, *Bauer*, and *Scott*, support the conclusion that an operator's refusal is predicated upon a valid request to submit to testing pursuant to N.D.C.C. § 39-20-01.  The language of N.D.C.C. § 39-20-04, relating to the imposition of revocation as a penalty, and N.D.C.C. § 39-20-05, relating to how the administrative hearing is conducted, both require a request for testing be made under N.D.C.C. § 39-20-01.  We conclude that a prerequisite to a determination that an operator has refused a request for testing is finding that the request for testing was made under N.D.C.C. § 39-20-01.

2

[¶6]    This Court reviews administrative agency decisions to suspend driving privileges under N.D.C.C. ch. 28-32 and accords great deference to the agency's decision. *Guthmiller, v. N.D. Dep't of Transp.*, 2018 ND 9, ¶ 6, 906 N.W.2d 73. This Court must affirm an agency's decision unless:

> 1. The order is not in accordance with the law.
>
> . . . .
>
> 6. The conclusions of law and order of the agency are not supported by its findings of fact.
>
> . . . .

*Id*.

[¶7]    The administrative hearing officer found that Alvarado was "read a partial implied consent advisory," which "did not inform Mr. Alvarado that refusal of the chemical breath test was a crime punishable in the same manner as a DUI." The administrative hearing officer thereafter concluded Alvarado refused to submit to testing.

[¶8]    We have concluded the legislature unambiguously required a request for a refusal be preceded by a request for testing made in compliance with N.D.C.C. § 39-20-01. While this Court has allowed law enforcement to deviate from a verbatim reading of the statutory language of N.D.C.C. § 39-20-01(3)(a), we do require that the advisory communicate all substantive information of the statute. *See State v. Vigen*, 2019 ND 134, ¶ 15, 927 N.W.2d 430; *see also Korb v. N.D. Dep't of Transp.*, 2018 ND 226, ¶ 10, 918 N.W.2d 49 (finding that N.D.C.C. § 39-20-01(3)(a) provides the mandatory language that must be included in the advisory). Because Alvarado was only provided with a partial implied consent warning (he was not informed that refusing to take a chemical test could be treated as a "crime"), the request for testing was neither in compliance with N.D.C.C. § 39-20-01 nor sufficient to result in a refusal to submit to testing. We therefore conclude the administrative determination that Alvarado refused to take a chemical test is either not in compliance with the law or not supported by the administrative findings.

3

[¶9]   A request to submit to testing must be made in accordance to N.D.C.C. § 39-20-01 to support a determination that there has been a refusal to submit to testing under N.D.C.C. § 39-20-01.  A request for testing subsequent to a partial implied consent warning is not a request to test under N.D.C.C. § 39-20-01.  We affirm the district court, reverse the decision of the administrative hearing officer, and reinstate Alvarado's driving privileges.

[¶10]   Jon J. Jensen
         Jerod E. Tufte
         Lisa Fair McEvers

I Concur in the result.
         Daniel J. Crothers


**VandeWalle, Chief Justice, concurring specially.**

[¶11] Section 39-20-01(3)(a), N.D.C.C., requires specific information be communicated by law enforcement when requesting an individual arrested for driving under the influence submit to chemical testing. *State v. Vigen*, 2019 ND 134, ¶ 7, 927 N.W.2d 430. In addition to informing individuals that North Dakota law requires them to take a chemical test, the statute mandates that law enforcement officers "shall inform the individual refusal to take a breath or urine test is a crime punishable in the same manner as driving under the influence." N.D.C.C. § 39-20-01(3)(a). Before a chemical test may be administered, law enforcement must read the "complete implied consent advisory." *State v. O'Connor*, 2016 ND 72, ¶ 1, 877 N.W.2d 312. For an advisory to be considered "complete," all substantive information in the statute must be communicated to the individual. *Vigen*, at ¶ 7. "It is axiomatic that before there can be a 'refusal' to submit to testing under Section 39-20-01, there must be a valid request for testing under the statute." *Gardner v. N.D. Dep't of Transp.*, 2012 ND 223, ¶ 8, 822 N.W.2d 55 (*quoting Throlson v. Backes*, 466 N.W.2d 124, 126 (N.D. 1991)); *see also State v. Bauer*, 2015 ND 132, ¶ 7, 863 N.W.2d 534.

[¶12]   While this Court has allowed law enforcement to deviate from a verbatim reading of the statutory language of N.D.C.C. § 39-20-01(3)(a), we do require that the

4

advisory communicate all substantive information of the statute. *See Vigen*, 2019 ND 134, ¶ 15, 927 N.W.2d 430; *see also Korb v. N.D. Dep't of Transp.*, 2018 ND 226, ¶ 10, 918 N.W.2d 49 (finding that N.D.C.C. § 39-20-01(3)(a) provides the mandatory language that must be included in the advisory). If all substantive information of the statute is not communicated, a valid request for testing under the statute does not occur. Without a valid request for testing, including a valid advisory, there can be no refusal to submit to testing under N.D.C.C. § 39-20-01. *See Gardner*, 2012 ND 223, ¶ 8, 822 N.W.2d 55.

[¶13] In *O'Connor*, an officer provided an individual "with a partial implied consent advisory which failed to inform him that refusal to take a chemical test 'is a crime punishable in the same manner as driving under the influence.'" *O'Connor*, 2016 ND 72, ¶ 3, 877 N.W.2d 312 (*quoting* N.D.C.C. § 39-20-01(3)(a)). We determined that under the plain terms of N.D.C.C. § 39-20-01(3)(b), test results obtained following an incomplete advisory were inadmissible in a criminal proceeding for driving under the influence. *Id*. The Court also discussed the inadmissibility of voluntary test results where a proper implied consent agreement is not read. *Id*. at ¶ 12. The plain language of N.D.C.C. § 39-20-01(3)(a) requires a valid request for testing before any next steps can occur, whether that be an individual consenting to or refusing chemical testing.

[¶14] Here, there is no dispute that the deputy read Alvarado an incomplete implied consent advisory. Like in *O'Connor*, the deputy in this case failed to inform Alvarado that refusal to take a chemical test is a crime punishable in the same manner as driving under the influence. The only difference is that Alvarado refused to take the test, where O'Connor consented. *See O'Connor*, 2016 ND 72, ¶ 18, 877 N.W.2d 312 (VandeWalle, C.J., concurring specially) ("I understand that had the person refused to take the test and been convicted and punished in the same manner as driving under the influence, the person could very well have been disadvantaged by the advisory in this instance.") While the *O'Connor* decision was based primarily upon the exclusion remedy in N.D.C.C. § 39-20-01(3)(b), the lack of an equivalent statute addressing refusal does not preclude relief. Instead, relief is granted not by excluding test results,

but from recognizing that for a refusal of a chemical test to be valid, it must be preceded by a valid request. *See Gardner*, 2012 ND 223, ¶ 8, 822 N.W.2d 55.

[¶15]  The Department contends that Alvarado only needed to be informed of the consequences of the administrative proceeding in order for his refusal to be valid and that the legislature specifically did not provide a remedy for an individual who refuses. This assertion contradicts the plain meaning of N.D.C.C. § 39-20-01(3)(a). Furthermore, one of the purposes of the implied consent advisory is to encourage individuals to take the chemical tests and being informed of potential criminal sanctions may persuade some individuals that would otherwise refuse testing. Only providing the part of the advisory related to administrative penalties ignores the legislature's intent to encourage testing. The legislature created specific warnings that must be read in order for the implied consent advisory to be valid. Neither the Department nor law enforcement have the authority to decide what type of penalties, whether criminal or administrative, an individual may receive based on what part of the advisory an officer chooses to read.

[¶16]  Gerald W. VandeWalle, C.J.